**UNITED STATES of America**
v.
**Robert Maurice SHERWOOD, Defendant.**

United States District Court
S. D. New York.
Aug. 4, 1959.

Edward C. Jaegerman, New York City, Trial Atty. for Govt. Securities and Exchange Commission.

Simpson, Thacher & Bartlett, New York City, for defendant, Albert C. Bickford, Fifield Workum, Whitney North Seymour, Jr., New York City, of counsel.

SUGARMAN, District Judge.

By order to show cause filed February 6, 1959, the United States of America moves pursuant to F.R.Crim.P. 42 (b), 18 U.S.C.A., and 18 U.S.C.A. § 401 for an order adjudging Robert Maurice Sherwood to be in criminal contempt for not obeying a final decree of permanent injunction entered against him on consent in the action entitled Securities and Exchange Commission v. Canadian Javelin Limited, Robert Maurice Sherwood et al., Civ. 138–85.

The application for the order to show cause alleges *inter alia* that:

"1. On September 23, 1958 the Securities and Exchange Commission filed in this Court a complaint * * * This action complained of sales of the common capital stock of Canadian Javelin Limited in violations of both the registration and fraud provisions of the Securities Act of 1933 and the anti-market manipulation provisions of the Securities Exchange Act of 1934.

"2. On November 24, 1958, United States District Judge Sidney Sugarman, sitting in the Southern District of New York, issued a permanent injunction enjoining Robert Maurice Sherwood and others from, among other things, * * * violations of the registration provisions of the Securities Act of 1933, in the offer and sale of common shares of Canadian Javelin Limited.

"3. On November 24, 1958, Robert Maurice Sherwood through his American Counsel, Simpson Thacher and Bartlett, by Albert C. Bickford, a partner, consented to the entry of this final decree of permanent injunction. * * *"

"4. It was clearly stated both in open court and in conferences leading to the acceptance of the consent, that all of the Canadian Javelin Limited shares received by Robert Maurice Sherwood from Canadian Javelin Limited, the issuer, or from John Christopher Doyle, a control person of the issuer, were and would remain control shares in Sherwood's hands, and could not be offered and sold without full registration with the Securities and Exchange Commission or, at the very least, without a request for and receipt of a so called no action letter from the Securities and Exchange Commission, based on an acceptable change of circumstances, which letter in turn would be required to be filed with the Court as a basis for an application for modification of the permanent injunction, to release any shares covered in such no action letter.

"5. No registration statement covering shares of Canadian Javelin Limited has ever been filed with the Securities and Exchange Commission, and none has ever been in effect.

"6. * * * no request for modification of the permanent injunction was ever addressed to this Court.

"7. Since November 24, 1958 * * * Robert Maurice Sherwood has offered and sold more than 8,000 shares of Canadian Javelin Limited, by orders executed in the United States, to members of the public in the United States for about $125,000, in an almost daily marketing operation. More than 4,000 additional shares were offered and sold in Canada during this same period by the defendant Robert Maurice Sherwood.

"8. These shares were all shares received by Robert Maurice Sherwood from John Christopher Doyle who in turn received them from the issuer. * * * "

Of the quoted facts alleged in the petition herein the trial of the contempt prosecution established these: the civil action for injunction commenced by the Securities and Exchange Commission; the consent of the defendant Sherwood to a final injunction; sales of numerous shares of Canadian Javelin Limited in the United States by the defendant Sherwood without the filing of a registration statement with the Securities and Exchange Commission.

The prosecution's contentions are basically that:

1) Sherwood, by consenting to the injunction of November 24, 1958 undertook not to sell in the United States, until a registration statement was filed, the Canadian Javelin Limited shares which he did thereafter sell.

2) Even if the defendant's undertaking was not to sell the shares he took through Doyle unless and until a registration thereof was required and filed, such registration thereof was required and Sherwood is in contempt for selling the shares without the filing of a registration statement.

The first contention of the prosecution cannot be sustained. A reading of the language of the injunction, to which Sherwood gave his consent, in the light of all the testimony and exhibits presented showing the genesis thereof, demonstrates that in so far as is here pertinent, Sherwood undertook to refrain from selling, offering to sell, or transporting Canadian Javelin Limited shares *only if a registration statement should then be required* and not be filed as is suggested by the second contention.

The defendant contends that those portions of the permanent injunction which were allegedly violated do not meet the standards of definiteness required by F. R.Civ.P. 65(d), 28 U.S.C.A.[1]

Although the decree closely follows the statutory language, it nevertheless satisfies the requirement that a restraining decree shall "describe in reasonable detail * * * the act or acts sought to be restrained * * * "[2] Sherwood consented to a decree restraining him from trafficking in Canadian Javelin Limited shares until a registration statement was filed *if a registration statement be required by the Securities Act of 1933.*

▮ That the post-decree sales were made from the block of shares received by Sherwood from Doyle under the September 2, 1954 agreement was proven. The crucial issue therefore is, "Were the shares of Canadian Javelin Limited sold by Sherwood required to be registered before sale thereof by him?"

The prosecution theory is alternatively, first, that a registration statement was required to be filed because Sherwood was a statutory underwriter when he acquired his shares because he purchased them from an issuer with a view to distribution thereof, or second, that Sherwood was required to file a registration statement because when he made the sales complained of, he was a "control person".[3]

---

1. 2 Moore's Fed.Prac. (2d ed.) § 65.11.

2. F.R.Civ.P. 65(d).

3. Securities Act of 1933, § 2(11), 15 U.S. C.A. § 77b(11).

The evidence does not sustain the second charge that Sherwood was at the time of the sales a "control person". To the contrary, although Sherwood dominated 8% of the total issued stock, he was unable to secure a representation on the board of directors, he had had a falling-out with John Christopher Doyle, who appears to have been the dominant figure in the management of Canadian Javelin Limited, and Sherwood was unable to free the bulk of his shares for distribution until Doyle consented thereto. Furthermore, no statutory or case authority has been cited nor has any been found to sustain the prosecutor's broad contention that "the shares of Canadian Javelin, Ltd., held by the defendant, Robert Maurice Sherwood, received by him from John Christopher Doyle, an admitted control person of Canadian Javelin, Ltd., and sold by Sherwood both prior to and subsequent to the final decree of November 24, 1958, were control shares from the time of their issuance; remained in their status as control shares during the period that Sherwood and Doyle were working together 'in the interests of the company'; and remain control shares from then to this very day." The court knows of no authority for a holding that shares once owned by "control" persons retain "control" characteristics in the hands of subsequent owners.

■ As to the first contention, that Sherwood was a statutory underwriter, on this record I am not satisfied beyond a reasonable doubt that at the time Sherwood took his shares from the issuer through Doyle, he purchased them with a view to the distribution thereof.[4]

Defendant points to the long period between his purchase of and the first sale from his block of Canadian Javelin Limited shares. From this, he argues that:

"From such behavior, it is impossible to infer the intention to distribute, *at the time of acquisition*, that it is necessary under the Act to qualify Sherwood as an underwriter within the meaning of the Act. His retention of the shares for a minimum of two full years after he personally had obtained physical possession of them belies any inference that he had originally acquired them 'with a view to distribution,' and is inconsistent with any such intention."

On the proof before me it appears that Sherwood took the unrestricted ownership of the block of shares out of which the post-decree sales were made in September 1955 when they were delivered to his agents, Lombard & Odier. No sales or other transactions were made out of this block until September 1957. The passage of two years before the commencement of distribution of any of these shares is an insuperable obstacle to my finding that Sherwood took these shares with a view to distribution thereof, in the absence of any relevant evidence from which I could conclude he did not take the shares for investment. No such evidence was offered at the trial. In fact, the only reference to Sherwood's intention with regard to the block of stock which he received appears when government counsel was cross-examining Sherwood's Canadian counsel, Courtois. The testimony, if anything, indicates Sherwood's intention not to sell his stock. Courtois' testimony on this score is as follows:

"A. I remember asking Mr. Sherwood if he had any intention of selling any of his shares or disposing of his holdings in Canadian Javelin.

"Q. And what was his answer?

"A. His answer was no because he said for the time being he had a large block and he thought as such it had some value. * * * *"

This decision, of course, is not to be deemed a finding that the shares of Canadian Javelin Limited stock owned

---

4. Cf. Securities Act of 1933, § 2(11); Gilligan, Will & Co. v. Securities and Exchange Commission, 2 Cir., 1959, 267 F. 2d 461.

by Sherwood are not subject to registration under the Securities Act of 1933, nor is it a finding that future transfer of that stock by defendant would not constitute contempt.

This decision is merely a finding *that on this record* the prosecution has not proven, beyond a reasonable doubt, that the accused's transactions were violative of the decree of this court.

The motion to punish Robert Maurice Sherwood for contempt of this court's decree of November 24, 1958 is denied and it is so ordered.