UNITED STATES of America

v.

Robert Maurice SHERWOOD, Milton Berman, Arthur I. Korn and John Christopher Doyle.

Cr. No. 10692.

United States District Court
D. Connecticut.
July 24, 1964.

See, also, D.C., 38 F.R.D. 21.

Robert C. Zampano, U. S. Atty., New Haven, Conn., Herbert Edelhertz, Department of Justice, Washington, D. C, for plaintiff.

David Goldstein, Jacob D. Zeldes, Goldstein & Peck, Bridgeport, Conn., for defendant John Christopher Doyle.

Charles J. Cole, Edward F. Hennessey, III, Colin C. Tait, Robinson, Robinson & Cole, Hartford, Conn., for defendant Robert Maurice Sherwood.

Frank S. Meadow, New Haven, Conn., for defendant Arthur I. Korn.

Max Schorr, Henry Bright, New York City, for defendant Milton Berman.

CLARIE, District Judge.

The defendants, Robert Maurice Sherwood, Milton Berman, and Arthur I. Korn, have each moved, pursuant to Rule 12, Fed.R.Crim.P., that the Sixth Amendment to the Constitution and Rule 48 of the Federal Rules require that all remaining ten counts of this indictment be dismissed as to them as a matter of law. The hearing on the present motion was limited by the Court to the issues involving post-indictment delay. In addition to considering all the pleadings and the Clerk of the Court's file record in this matter, the Court reviewed the transcripts relating to the return of the indictment in open court, the affidavits and counter-affidavits of the parties containing admissions [1] and certain facts upon which all agreed,[2] together with their respective memoranda of law.

1. See Kossack Affidavit, filed June 1964.

2. See Edelhertz Affidavit, filed June 30, 1964.

After a careful review of all the papers, the Court finds that each of said three named defendants, Robert Maurice Sherwood, Milton Berman, and Arthur I. Korn, has been denied his constitutional right to a speedy trial. The Court further finds that there was unnecessary delay on the part of the Government in bringing said named defendants to trial as required by Rule 48(b), Fed.R.Crim. P., and the Court hereby dismisses all remaining counts of said indictment, insofar as they relate to each of said three named defendants and none other.

On July 2, 1962, a criminal indictment containing eleven counts was returned against Robert Maurice Sherwood, Milton Berman, Arthur I. Korn, and John Christopher Doyle. At that time, the indictment was ordered impounded by the Court on motion of the Assistant United States Attorney, but no reason therefor appeared in the record.[3] No bond was requested or set and no summons or bench warrant was ordered. No further action was taken in the matter, until April 22, 1963, at which time a representative of the United States Attorney's office moved the court, that the indictment be unsealed on Wednesday, April 24, 1963, at 9:00 A.M.,[4] and this motion was granted. When the latter date arrived, the Court announced that because of circumstances disclosed by the Assistant United States Attorney (other than those in open court and on the record), a temporary continuance of the order re-impounding the indictment would be effected and the indictment would remain impounded until further order of the Court.[5] On August 6, 1963,

upon motion of the Government, the impounding order was finally revoked, the indictment was unsealed, and an order that a summons might issue was filed.[6] Thus, thirteen (13) months and four (4) days elapsed between the time the indictment was returned by the grand jury and impounded by the Court and the time of its unsealing and being filed as a public record.

The indictment, originally in eleven counts,[7] accused all of the defendants of violating the Securities Act of 1933; two counts alleged fraud,[8] one count conspiracy,[9] three counts of violating securities registration requirements,[10] and five counts of stock price manipulation.[11] All concerned the defendants' dealing in the common capital stock of Canadian Javelin, Ltd., a Canadian corporation, engaged in developing mining properties in the Province of Newfoundland. The defendant Sherwood was alleged to be engaged in Javelin's corporate stock promotion, defendant Berman participated as a stock salesman, and defendant Korn as a broker-dealer.

Each count of the indictment returned on July 2, 1962, set forth material allegations, which occurred within the five-year criminal statute of limitations, 18 U.S. C.A. § 3282.

"As to delay from the time of the commission of the offense to the commencement of the criminal proceedings, that is controlled by the Statute of Limitations, * * *." Hoopengarner v. United States, 270 F.2d 465, 469 (6th Cir. 1959).

"Questioning for delay alone the validity of an indictment returned

---

3. Tr. of Hearing (July 2, 1962) 2–3.

4. Tr. of Hearing (Apr. 22, 1963) 2.

5. Tr. of Hearing (Apr. 22, 1963) 3.

6. Tr. of Hearing (Aug. 6, 1963).

7. Count Two of the indictment was dismissed upon the Government's motion. Tr. of Hearing (Feb. 10, 1964) 38–39.

8. Counts One and Two charge violations of 15 U.S.C. § 77q(a).

9. Count Eleven charges violation of 18 U.S.C. § 371.

10. Count Three charges violation of 15 U.S.C. § 77e(a)(1) and Counts Four and Five allege violations of 15 U.S.C. § 77e(a)(2).

11. Counts Six through Ten charge violations of 15 U.S.C. § 77q(b).

within the statutory period would result only in confusion and uncertainty in the prosecution of crime." United States v. Tane, 29 F.R.D. 131, 132 (E.D.N.Y.1962), aff'd., 329 F.2d 848 (2d Cir. 1964).

The defendants predicate their claim for dismissal on the Sixth Amendment to the Constitution and Rule 48(b) of the Federal Rules of Criminal Procedure. The Sixth Amendment provides in part:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, \* \* \*."

Rule 48(b) states in part:

> "\* \* \* if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment \* \* \*."

The general legal issue becomes a simple one, namely, what constitutes the "right to a speedy trial" in a federal criminal matter and what amounts to such "unnecessary delay", as would warrant a dismissal of the indictment. However, when the law is applied to the varied circumstances in particular cases, the lines which separate necessary and unnecessary delay, legal and illegal action, become obscure and shadowed.

> "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905).

> "\* \* \* (A)lthough a defendant has a right to a speedy trial (Sixth Amendment, as incorporated into Rule 48(b)), all that is required is that the pace of government proceedings be reasonable under all of the circumstances." United States v. Kaufman, 311 F.2d 695, 698 (2d Cir. 1963).

The Government contends that not only was the progress of the prosecution reasonable under all the circumstances, but that the defendants, Sherwood, Berman, and Korn, have waived any right to claim prejudice due to delay, since none of them has made any move to request a speedy trial since their arrest, to the present date.

> "The federal decisions, however, clearly establish that the right to a speedy trial is the defendant's personal right and is deemed waived if not promptly asserted." United States v. Lustman, 258 F.2d 475, 478 (2d Cir. 1958).

> "\* \* \* (I)t is not the law that the mere lapse of such period of time between commission of a crime and trial of an indictment therefor establishes denial of a speedy trial within the intendment of the sixth constitutional amendment. The amendment guarantees the legal right to an accused to demand and to be accorded a trial as soon as the orderly conduct of the business of the court will permit and one complaining of delay must affirmatively demand his right of trial." Bayless v. United States, 147 F.2d 169, 170 (8th Cir. 1945).

> "It has been held that the constitutional right to a speedy trial does not arise until after such formal complaint has been filed." Hoopengarner v. United States, 270 F.2d 465, 469 (6th Cir. 1959).

The corporate operations and stock dealings of Canadian Javelin, Ltd., in the United States have been under the close scrutiny of the Securities and Exchange Commission, at least since August 1, 1954. In fact, in November of 1958, a permanent injunction was issued by consent, in the United States District Court for the Southern District of New York, enjoining the defendant Sherwood from violating the registration provisions of the Securities Act of 1933 in the offer and sale of common shares of Canadian Javelin, Ltd.[12] Said court, on August

12. United States v. Sherwood, 175 F.Supp. 480, 481 (S.D.N.Y.1959).

4, 1959, after having cited the defendant Sherwood on a motion to punish for criminal contempt for violating said injunction, found that the Government had not proven that he had violated the injunctive decree of the Court.[13]

Although no recorded reason was advanced in this Court by the government attorney when he requested the sealing of the indictment at the time it was returned by the grand jury on July 2, 1962, the Government concedes such procedure was followed, because the defendants, Sherwood and Berman, were at the time outside of the United States.[14] For the same reason no warrants or summons were requested of the Court. Rule 6(e), Fed.R.Crim.P. provides, in part:

> "* * * The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

During the period from July 2, 1962 to early September 1962, the Government acknowledges that the indictment remained sealed because of the absence of defendants Sherwood and Berman, as hereinbefore mentioned.[15] However, from September 1962 to August 8, 1963, the sealing was continued in order that the Government might evaluate the claims of another defendant, Doyle, in respect to an alleged promise by the Government of immunity to him from criminal prosecution,[16] conditioned that he would carry out a rehabilitation program (prescribed by the Securities Exchange Commission) for Canadian Javelin, Ltd.

The remaining three defendants, Sherwood, Berman, and Korn were never aware until after August 6, 1963, that an indictment against any of them had been pending in court under seal, since July 2, 1962.[17] In the meantime, the criminal statute of limitations of five years, 18 U.S.C.A. § 3282, continued to run. The third count would normally be barred July 10, 1962; the fourth count, July 23, 1962; the fifth count, July 31, 1962; the sixth count, July 12, 1962; the seventh count, August 9, 1962; the eighth count, August 17, 1962; the ninth count, September 7, 1962; the tenth count, September 28, 1962; and the first and eleventh counts, which contained allegations referring to acts performed between January 1, 1955 and July 1, 1958, would be barred from prosecution after July 1, 1963. It is the Government's claim that the statute of limitations is governed by the original return date of the indictment to court and not the date when the indictment is unsealed and made an open public record. The defendants, on the other hand, contend that if the Government's position is upheld, then by sealing an indictment, which is returned within the statutory period, the Court can thereby extend, for an indefinite period, the statute of limitations prescribed by the Congress. This procedure would defeat the statute's intended legislative purpose, namely, of bringing into repose at some specific terminal date, exposure to prosecution and an end to litigation.

The relevant part of Rule 6(e), Fed.R.Crim.P., authorizes such sealing of an indictment, so that it may "be kept secret until the defendant is in custody or has given bail." It is obviously intended to be exercised only for a reasonable and limited period, during which

---

13. United States v. Sherwood, 175 F.Supp. 480 (S.D.N.Y.1959).

14. Kossack Affidavit, supra, note 1, p. 2; See Jaegerman Affidavit, filed June 30, 1964, p. 1.

15. Ibid.

16. Kossack Affidavit, supra, note 1, p. 4.

17. Sherwood Affidavit, filed June 9, 1964, p. 2; Berman Affidavit, filed June 8, 1964, p. 1; Korn Affidavit, filed June 4, 1964, p. 1.

prompt government action can accomplish its clearly stated purpose.

The affidavit of Nathaniel E. Kossack, Chief of the Fraud Section of the Criminal Division of the Department of Justice, contains a refreshing and forthright statement of what transpired in the handling of the indictment, once it was returned.[18] In paragraph 4 thereof, he states that the attorney for the Securities Exchange Commission recommended to Assistant United States Attorney Markle, that the *impounding of the indictment continue for an indefinite, but short time, at most a few months,* since it was his understanding that defendants Sherwood and Berman were outside the United States. (Emphasis added). In paragraphs 7 and 8, he further represents that from on or about August 23, 1962, at the request of an attorney for a fourth defendant, Doyle, he commenced "a full-scale inquiry into the allegations that there had been a commitment not to prosecute Doyle."

Attorney Kossack states further in paragraph 8,

"It is impossible to say, with any specificity, on what exact date the prime reason for the continuation of the impounding was the commitment allegation rather than the presumed absence from the United States of defendants Sherwood and Berman. I can, however, firmly represent to this Court that from early September, 1962, the sole reason in my mind for the continuance of the impounding was the necessity of a prior resolution of the issue of the alleged commitment."[19]

On or about April 16, 1963, when the Government had made its determination relative to the alleged commitment and decided to proceed with the prosecution, it was at the behest of the remaining defendant, Doyle, that the prosecution renewed its request to the Court that the indictment remain impounded.[20] Thus, it is by the Government's own admission, this indictment remained impounded for more than eleven (11) months, from early September 1962 until August 6, 1963, by reason of circumstances caused by itself or at the behest of someone other than these three defendants, in which the Government acquiesced.

 Said defendants, Sherwood, Berman, and Korn, did not at any time prior to August 6, 1963 know of the indictment returned against them on July 2, 1962. It cannot be said therefore, that because they failed to ask for a speedy trial during the period in which the indictment was sealed, they have waived such right and acquiesced in the delay. When an indictment is kept secret and a defendant knows not of its existence, he cannot be said to have waived a constitutional right pertaining to it.

" '(C)ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' " Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). See Taylor v. United States, 238 F.2d 259, 261 (D.C.Cir.1956).

Had this indictment not been sealed, but rather filed as a public record, these defendants would not have been deprived of the opportunity to move for an early trial. Subsequently if the Government had then denied such right by inaction, their rights could have been protected by the court.

"The rule is firmly established that the protection afforded by the Sixth Amendment has no application until after a prosecution is instituted,

18. Kossack Affidavit, supra note 1.

19. Id. at p. 4.

20. Kossack Affidavit, supra note 1, p. 4; See Christy Affidavit, filed June 5, 1964, pp. 9–10.

\* \* \*." Foley v. United States, 290 F.2d 562, 565 (8th Cir. 1961).

Rule 6(e) grants discretion to the Court to seal an indictment, until the defendant is in custody or has given bail. This rule must receive an equal status with federal statutory law. 18 U.S.C.A. § 3771. This discretionary authority may be exercised notwithstanding the fact that the indictment was returned on the last day within the statute of limitations. The exercise of such discretionary action must be necessary, of reasonable duration under the circumstances, and exercised only to accomplish the limited purposes authorized by the criminal rule for which it was designed.

Was the primary purpose for keeping this indictment sealed from August 23, 1962 to August 6, 1963, within the purview of Criminal Rule 6(e)? Was it to keep secret the indictment until Sherwood and Berman might return into the United States, so their custody could be secured? Was its purpose to give time to the Government to investigate and decide, whether or not it would move to quash the indictment before it was made public? Was such action taken because of an alleged commitment to defendant Doyle, that he would not be prosecuted? The Government concedes, that at least since early September 1962 until August 6, 1963, the last was the primary reason.

The Government contends that although this latter fact was true, unless these defendants can show actual prejudice they have no valid justification to warrant a dismissal. This Court is of the opinion, based on the facts in this particular case, wherein the criminal statute of limitations was about to run, that a reasonable time within which to accomplish the purposes of Rule 6(e), under the circumstances, should extend not more than ninety (90) days from the return date. Under other circumstances, such as where the unsealing was done before the running of the statute, such limitation would not necessarily apply.

Inasmuch as the sealing of this indictment was extended by action initiated by the Government and continued for a period of thirteen (13) months and four (4) days from the date of the grand jury's return, the Court presumes prejudice and finds as a matter of law, that the rights of the defendants, Sherwood, Berman, and Korn, who did not consent to or instigate said delay, have been prejudiced. This finding is made without relying on the self-serving factual claims in said affidavits filed by each defendant, wherein they set forth the manner in which their cases have been prejudiced.[21]

The five-year criminal statute of limitations would have little or no meaning were the law to be construed otherwise. A person would never know with certainty that a sealed indictment might be lurking in undisclosed government files, held in abeyance for a year or years to satisfy the personal motives of a government official. To be a nation of law, and not subject to the whims of men, law must be administered uniformly and objectively. The United States of America has sufficient power, prestige, and facilities to openly indict a criminal and bring him to the bar of justice. It is not in keeping with our heritage, to destroy that image of America, by a policy of lying in wait with a sealed indictment, after the criminal statute of limitations has run, waiting for an individual defendant to return across its borders.

All counts of the criminal indictment are hereby dismissed against the three defendants, Sherwood, Berman, and Korn, and none other. So ordered.

21. See supra note 17.