UNITED STATES of America, Appellee,

v.

Benjamin G. SPRECHER,
Defendant–Appellant.

No. 600, Docket 92–1402.

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1992.

Decided March 9, 1993.

Elkan Abramowitz, New York City (Diana Parker, Thomas A. Arena, Alan Scribner, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, of counsel), for defendant-appellant.

Andrew E. Tomback, Asst. U.S. Atty. for S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty. for S.D.N.Y., John W. Auchincloss II, Asst. U.S. Atty. for S.D.N.Y., New York City, of counsel), for appellee.

Before: MESKILL, Chief Judge,
MAHONEY and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Benjamin G. Sprecher appeals from a judgment of conviction dated July 1, 1992 and entered in the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, *Judge*, after a nonjury trial. Sprecher was convicted on two counts of criminal conspiracy in violation of 18 U.S.C. §§ 371 and 2 (1988); five counts of making false statements in violation of 18 U.S.C. §§ 1001 and 2 (1988); one count of perjury in violation of 18 U.S.C. § 1621 (1988); one count of obstruction of justice in violation of 18 U.S.C. § 1503 (1988); and one count of obstruction of proceedings in violation of 18 U.S.C. § 1505 (1988). He was sentenced to concurrent terms of forty-six months imprisonment and two years supervised release. In addition, the court imposed a $50,000 fine and a $500 special assessment.

We affirm on all issues of criminal liability substantially for the reasons stated in the thorough opinion of the district court, *United States v. Sprecher*, 783 F.Supp. 133 (S.D.N.Y.1992), familiarity with which is presumed. We write only to address a sentencing issue posed by U.S.S.G. § 2X1.1, concluding that Sprecher was inappropriately denied a reduction of three levels in his adjusted offense level pursuant to that provision.

We accordingly affirm the judgment of conviction, but vacate Sprecher's sentence and remand for resentencing.

### Background

We set forth only those facts relevant to the sentencing issue to which this opinion is addressed. Sprecher was convicted on charges involving a conspiracy to defraud the Internal Revenue Service regarding taxes due on the sale of shares of Towers

Financial Corporation ("Towers") and a related false statement (counts one and two); a conspiracy unlawfully to sell unregistered shares of World Wide Medical Technology, Inc. ("World Wide") and related false statements (counts three through seven); perjury in testifying at an investigation conducted by the Securities and Exchange Commission ("SEC") (count nine); obstruction of justice in connection with that investigation (count ten); and obstruction of a subsequent SEC investigation (count eleven). The conduct involved in counts nine and ten occurred prior to November 1, 1987, and was therefore not subject to the Sentencing Guidelines, which apply to all the other counts on which Sprecher was convicted.

The sentencing issue upon which we focus relates to the World Wide counts. World Wide was a corporation that listed Sprecher as its attorney, and his office address as the corporation's principal executive office and place of business, in a 1983 registration statement. Sprecher had incorporated World Wide; one of his legal clients, Jacob Roth, owned approximately 3.5 million shares of World Wide's stock, constituting approximately 97% of the outstanding shares. In April 1987, Roth became a director of World Wide.

Early in 1988, two business associates discussed with Sprecher their desire to effectuate a merger between a private company and a corporate shell, and he suggested that World Wide be utilized as the shell. In connection with this transaction, it was agreed that Roth would be paid $20,000 for his World Wide shares, and those shares would be divided between Sprecher and his associates with a view to their public sale.

The World Wide stock was not registered under the Securities Act of 1933, 15 U.S.C. §§ 77a (1988) et seq. (the "1933 Act"), but Sprecher and the other participants in the merger hoped to utilize the exemption from registration provided in Rule 144(k), 17 C.F.R. § 230.144(k) (1992), promulgated under the 1933 Act, in order to sell the securities on the open market. This required that Roth not be a control person of World

Wide for at least three months prior to any public sale of the corporation's stock.

To qualify for the Rule 144 exemption, Sprecher and his coconspirators created and backdated documents reflecting fictitious meetings of the World Wide board of directors, and submitted numerous misleading documents regarding World Wide to the SEC. This conduct was the basis of Sprecher's convictions on counts three through seven of the indictment.

Ultimately, in excess of 100,000 of World Wide's 3.5 million shares were sold to the public, resulting in proceeds of approximately $75,000 to the selling conspirators. Sprecher's presentence report ("PSR"), adopted in this respect by the district court, calculated that the intended probable loss to the public of the World Wide conspiracy was $1.3 million. This approximation was based upon a selling price of $.375 per share, the lowest price at which any of the World Wide shares were sold, multiplied by the 3.5 million World Wide shares available for public sale.

The PSR grouped the various counts of conviction in accordance with U.S.S.G. § 3D1.1(a). It calculated an adjusted offense level of twenty-five for counts one and two, but the district court reduced this by seven levels on the basis that no specific amount of tax loss had been proved. A further elimination in the course of Sprecher's sentencing hearing of a two-level enhancement for these counts accorded by the PSR resulted in an adjusted offense level of sixteen for counts one and two.

The PSR noted that counts nine and ten involved conduct that occurred prior to November 1, 1987 and accordingly was not governed by the Sentencing Guidelines, but that if considered under the Guidelines, "these counts would be grouped and the offense level would be 12 which would not affect the final outcome of the sentencing range in this case." The PSR attributed an offense level of twelve to count eleven.

The PSR calculated an adjusted offense level of twenty-one for counts three through seven, but the district court reduced this to nineteen by reducing an enhancement for Sprecher's role in the of-

fense from four levels to two. The court concluded that with respect to the World Wide scheme, the government had not established that Sprecher was an organizer or leader "of a criminal activity that involved five or more participants or was otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a). The adjusted offense level for counts three through seven was then further adjusted to twenty-one by operation of U.S.S.G. § 3D1.4 to take into account the other offenses of which Sprecher had been convicted.[1] The result of a combined adjusted offense level of twenty-one and a criminal history category of I was a sentencing range of thirty-seven to forty-six months.

### Discussion

The adjusted offense level of nineteen for counts three to seven included a nine-level enhancement pursuant to U.S.S.G. § 2F1.1(b)(1)(J) as in effect at the time that the World Wide offenses were committed[2] because of the intended probable loss to the public of $1.3 million from the conspiracy to sell the unregistered World Wide

shares. Sprecher contends that it was never contemplated that all the shares could or would be sold, and in any event that he should be accorded a reduction of three levels pursuant to U.S.S.G. § 2X1.1. Sprecher explicitly requested, and was denied, this three-level reduction at his sentencing hearing.

Section 2X1.1 applies to conspiracies not covered by a specific offense guideline, *see* § 2X1.1(c),[3] and calls for application of the "base offense level from the guideline for the substantive offense" with the following pertinent adjustment:

> If a conspiracy, decrease by 3 levels, unless the defendant or a coconspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2).

Application note 4 to § 2X1.1 has particular relevance here, and provides in part:

---

1. It seems to us that the § 3D1.4 increase should have been three levels, rather than two. Section 3D1.4 directs sentencing courts to determine the combined offense level "by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated" in a table set forth in § 3D1.4. The table prescribes increases in offense levels corresponding to varying numbers of "units;" units are attributed to groups of offenses in accordance with their relationship to the group with the highest offense level.

 The record does not disclose the district court's treatment at sentencing of count 11, which is grouped separately from the other guidelines offenses; however, the PSR calculates the offense level for this count as 12. Assuming the district court adopted this offense level recommendation, Sprecher should have received an additional one-half unit for his conviction on count 11 beyond the two units he received for his convictions on the first two groups of offenses, for a total of two and one-half units. The table directs an increase of three offense levels where a defendant is accorded two and one-half units.

2. Sprecher's sentence was enhanced by nine levels for a fraud of $1.3 million under § 2F1.1(b)(1)(J) as in effect prior to the 1989 amendments, presumably to alleviate any *ex post facto* concerns raised by greater enhance-

ment for this dollar amount under the 1989 amendments that became effective subsequent to the commission of Sprecher's offenses of conviction but prior to his sentencing. *See* U.S.S.G. App. C, amend. no. 154; *United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991) (sentencing court normally applies guidelines in effect at time of sentence unless doing so enhances punishment and thereby poses *ex post facto* problem), *cert. denied*, — U.S. —, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); *see also United States v. Holmes*, 975 F.2d 275, 278 (6th Cir.1992) (same), *cert. denied*, — U.S. —, 113 S.Ct. 1322, 122 L.Ed.2d 708 (1993); *United States v. Phillips*, 952 F.2d 591, 594 (1st Cir. 1991) (same), *cert. denied*, — U.S. —, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992); *United States v. Green*, 952 F.2d 414, 416 (D.C.Cir.1991) (same), *cert. denied*, — U.S. —, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992); *United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991) (same); *United States v. Swanger*, 919 F.2d 94, 95 (8th Cir.1990) (per curiam) (same).

3. The conspiracy to sell unregistered securities is not covered by another specific offense guideline. *See* U.S.S.G. § 2X1.1(c)(1), comment. (n. 1); *see also United States v. Skowronski*, 968 F.2d 242, 249–50 (2d Cir.1992) (discussing applicability of § 2X1.1). Thus, § 2X1.1 is the proper guideline to apply to this conspiracy.

In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count (or group of closely-related multiple counts) is whichever of the following is greater: the offense level for the intended offense minus 3 levels (under § 2X1.1(b)(1), (b)(2), or (b)(3)(A)), or the offense level for the part of the offense for which the necessary acts were completed (or about to be completed but for apprehension or interruption). For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

Under the Guidelines as they existed at the time of the World Wide offenses, see supra note 2, the greater offense level results from increasing by nine levels for the contemplated sale of $1.3 million in World Wide shares and then reducing by three levels, rather than from increasing by five levels for an actual sale of approximately $75,000. See U.S.S.G. App. C, amend. no. 154. It seems clear, however, that Sprecher was entitled to a three level reduction. Any imprecision in the guideline on that score is dispelled by the clarifying application note. Even if, as the government successfully contended below, the World Wide distribution scheme was forestalled by "apprehension or interruption by some similar event beyond [the conspirators'] control" within the meaning of the guideline, it is clear that the conspirators at that juncture had completed "all of the acts necessary for the successful completion of part, but not all, of the intended offense" within the meaning of the application note.

Application of the § 2X1.1 adjustment would reduce the adjusted offense level for the World Wide counts from nineteen to sixteen, equivalent to the level for counts one and two. A final offense level would then be determined pursuant to U.S.S.G. § 3D1.4, resulting in an increase of three levels, see supra note 1, and an offense level of nineteen, for which the sentencing range (when combined with a criminal history category of I) is thirty to thirty-seven months. This contrasts with the final offense level of twenty-one, and sentencing range of thirty-seven to forty-six months, that resulted from the district court's refusal to accord Sprecher the § 2X1.1 three-level adjustment.

We recognize that counts nine and ten are pre-Guidelines counts that each carry a maximum sentence of five years, and that either count could thus justify the forty-six month imprisonment to which Sprecher was sentenced. The district court considered these counts subordinate to the Towers and World Wide counts, however, and the entire sentencing hearing was devoted to application of the Guidelines to Sprecher's offenses of conviction. It is therefore appropriate to remand for resentencing in light of our conclusion that the three-level § 2X1.1 reduction was inappropriately denied to Sprecher. *Cf. United States v. Biaggi,* 909 F.2d 662, 681–82 (2d Cir.1990) (remanding for resentencing in light of reversal of some, but not all, counts of conviction), *cert. denied,* —— U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *United States v. Blackmon,* 839 F.2d 900, 916–17 (2d Cir.1988) (same). In doing so, we do not intend to circumscribe or limit the district court's discretion to arrive at an appropriate sentence for Sprecher in light of the court's intimate knowledge of the circumstances of this case. *See United States v. Alter,* 985 F.2d 105, 108 (2d Cir. 1993) (district judge remains free to reevaluate all aspects of sentencing not ruled on in appeal).

### Conclusion

The judgment of conviction is affirmed. The sentence is vacated and the case is remanded for resentencing.