81 F.3d 1147
 317 U.S.App.D.C. 191
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
SECURITIES AND EXCHANGE COMMISSION, Appellee,
v.
Benjamin G. SPRECHER, Appellant.
 No. 94-5006.
 United States Court of Appeals, District of Columbia Circuit.
 April 9, 1996.
Rehearing and Suggestion for Rehearing In Banc Denied May
17, 1996.*
 
 Before: WALD, SILBERMAN, and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause was considered on the record on appeal from the United States District Court for the District of Columbia, and was briefed by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 36(b) (January 1, 1994). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellant Benjamin Sprecher challenges the district court's summary judgment for the Securities and Exchange Commission determining that Sprecher violated Rule 10b-5 and § 5, granting disgorgement of $55,870, and enjoining him from committing future securities violations and from serving as an officer or director of any public company. We affirm.
 
 
 5
 Sprecher was the attorney for and had a controlling role in World Wide Medical Technology, a shell corporation with no assets or liabilities. Jacob Roth, a business associate of Sprecher, owned the majority of World Wide shares and was one of three directors. Sprecher and two other business associates, Louis Foti and Jay Hastings, devised a plan to acquire the World Wide stock from Roth for $20,000, merge World Wide with another company, and then sell the stock for a profit. The three associates wanted to be able to sell the stock freely, however, without the required disclosures for registered stock. The shares held by Roth were restricted because he had acquired the shares from World Wide in a non-public transaction. If the three associates acquired the stock from Roth, they would be "underwriters" under § 2(11), which defines "underwriter" as someone who purchases a security from an issuer or a person who controls the issuer with a view to reselling. 15 U.S.C. § 77(b)(11) (1994). And under § 4(1), underwriters are not exempt from § 5 registration requirements. 15 U.S.C. § 77(d)(1). Thus, in order to free the stock from registration requirements, Sprecher looked to Rule 144(k), which creates an exception from the definition of "underwriter" for securities acquired from an affiliate of the issuer--someone who directly or indirectly controls the issuer--if the affiliate has held the securities more than three years and, at the time of the sale, has not been an affiliate for at least three months. 17 C.F.R. 230.144 (1995). Roth clearly met the first criterion--he had held the shares more than three years. But as the controlling shareholder and the only active director, he was still an affiliate of World Wide.
 
 
 6
 In order to make it appear that Roth met this second criterion--and therefore that the shares met the 144(k) exemption--Sprecher and his two associates, on March 30, 1988, drafted and backdated minutes for a fictitious December 27, 1987 board meeting. In the false minutes, Roth was voted out of control and replaced by new directors, making it appear that as of March 30, 1988, Roth had not been an affiliate for over three months. These false minutes were mailed to the SEC, with an explanation for their late arrival, and also to World Wide's transfer agent with instructions for him to remove the legend restricting the shares pursuant to 144(k). The agent complied, and the newly unrestricted shares were transferred to Sprecher, Foti, and Hastings. Sprecher continued actively to develop the merger plans over the next few months, yet he filed a standard quarterly report (Form 10-Q) on May 31, 1988 with the SEC stating that World Wide had "no prospects" of a merger. The merger took place, and between July and December, 1988, Sprecher sold unrestricted, unregistered shares of World Wide to the public, making a profit of $55,870.
 
 
 7
 Sprecher was convicted in the Southern District of New York for perjury, obstruction of justice, making false statements, and conspiring to sell unregistered securities unlawfully. United States v. Sprecher, 783 F.Supp. 133 (S.D.N.Y.1992). The trial court determined the securities were not exempt from registration because Roth was an affiliate of World Wide at least through March 31, 1988, so the transfer of shares to Sprecher, also an affiliate of the company, did not free them from registration requirements under Rule 144. 783 F.Supp. at 158-59. The court also found that Sprecher made false statements by filing with the SEC false corporate minutes and false declarations that no merger was contemplated. Id. at 161. It imposed a fine of $50,000 based on the costs of incarceration. See SEC App. 317 (sentencing hearing transcript). On appeal, the Second Circuit affirmed, but remanded for resentencing. United States v. Sprecher, 988 F.2d 318 (2d Cir.1993).
 
 
 8
 The SEC subsequently brought this civil action in the District of Columbia District Court charging violations of Rule 10b-5 and § 5 and seeking injunctive relief and disgorgement. The district court determined that Sprecher was collaterally estopped from challenging the Rule 10b-5 and § 5 claims because substantially the same violations and underlying facts formed the basis for his criminal conviction, and that his affirmative defenses were without merit. Sprecher's counterclaim for damages and injunctive relief, based on an alleged pattern of SEC misconduct, was barred by § 21(g), which prohibits consolidating or coordinating any other action with any action by the Commission for equitable relief without SEC consent, even if the claims "involve common questions of fact." 15 U.S.C. § 78u(g) (1994). The court ordered disgorgement of the $55,870 profit, concluding disgorgement was not precluded by the criminal court's $50,000 fine, and enjoined Sprecher from violating the securities laws in the future and from serving as an officer or director of any public company pursuant to the Remedies Act of 1990, 15 U.S.C. §§ 78u(d)-(e) (1994).
 
 
 9
 Sprecher repeats on appeal his contention that he was not collaterally estopped from litigating whether he violated Rule 10b-5 and § 5. Rule 10b-5 makes unlawful "any untrue statement of a material fact" or any omission of a material fact "in connection with the purchase or sale of any security." 17 C.F.R. 240.10b-5 (1995). The New York court found that Sprecher intentionally made false statements in connection with the purchase or sale of a security, but it did not determine that the statements were material, because materiality was not an element of the criminal offense charged. The district court here nevertheless applied collateral estoppel, without explicitly addressing materiality. We agree with the SEC, however, that the statements were material as a matter of law. The statements involved who had control over the company--and therefore whether the shares were lawfully exempt from registration--and merger negotiations. We think it beyond question that these statements would be substantially likely to be considered significant information by any reasonable investor. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 448 (1976).
 
 
 10
 Sprecher similarly challenges the claim under § 5, which makes it unlawful to sell unregistered securities unless the securities qualify for an exemption. 15 U.S.C. § 77(e) (1994). He claims that the New York court did not decide whether the stock was exempt from registration, and that even if the stock were not eligible for the Rule 144(k) exemption, it was otherwise exempt under § 4(1). Despite Sprecher's attempts to distort the record, the New York court explicitly determined that the shares were not legitimately exempt from registration under Rule 144(k). 783 F.Supp. at 159. And although it did not address § 4(1) directly, the court stated that no other exemption was available, and in any event its determination that Sprecher and Roth were both World Wide affiliates (controlling persons) necessarily bars any exemption under § 4(1). Sprecher both bought the shares from a controlling shareholder with a view to distribution, and was a controlling person himself in the corporation; either of these suffices to make him an underwriter under § 4(1), and therefore not exempt from § 5 registration requirements. See § 2(11); United States v. Sherwood, 175 F.Supp. 480, 482-83 (S.D.N.Y.1959).
 
 
 11
 Sprecher's affirmative defense of equitable estoppel and his counterclaim for damages and for injunctive relief, which are both based on the same allegations of a pattern of Commission misconduct, are similarly barred. These allegations were litigated fully in Sprecher's motion to suppress and his post-conviction motions in the criminal trial. We therefore do not have to reach the issue of whether § 21(g) bars the counterclaim. But we think the district court likely correct. The rationale of the rule is to allow quick resolution of SEC actions, and even if based on the same facts--which the statute expressly says is not controlling--counterclaims might raise additional issues, such as immunity or the appropriate relief. Sprecher claims § 21(g) is only a venue provision that cannot bar counterclaims, which are really part of the same suit. But § 21(g)'s language is broader than Sprecher suggests. See, e.g., SEC v. Electronics Warehouse, Inc., 689 F.Supp. 53, 72 (D.Conn.1988), aff'd, 891 F.2d 457 (2d Cir.1989), cert. denied, 496 U.S. 942 (1990).
 
 
 12
 Finally, Sprecher's contentions that the court is precluded from imposing either disgorgement or an officer and director bar are meritless. Disgorgement is an equitable remedy, not a punishment like a fine. SEC v. Bilzerian, 29 F.3d 689, 696 (D.C.Cir.1994). The New York court expressly imposed the $50,000 fine to account for prison costs, and not as restitution or disgorgement. The D.C. district court therefore validly could order disgorgement. And its injunction barring Sprecher from serving as an officer or director also is valid as an exercise of its general equitable powers, since the conduct prohibited is similar in nature to the violations for which Sprecher was convicted. See Franklin v. Gwinnett County Public Schools, 112 S.Ct. 1028, 1034-35 (1992); NLRB v. Express Publishing Co., 312 U.S. 426, 435-36 (1941); Bilzerian, 29 F.3d at 695. It appears that Sprecher concedes the court could impose an officer and director bar under its general equitable powers in an appropriate case, but argues that an injunction here is inappropriate because he was not an officer or director. Sprecher's apparent concession is correct--a court may impose such a bar where appropriate. See SEC v. Posner, 16 F.3d 520, 521-22 (2d Cir.1994), cert. denied, 115 S.Ct. 724 (1995). And whether the person enjoined has held that precise position cannot be dispositive; the critical issue is whether the injunction restrains acts "of the same type or class" or that "may fairly be anticipated from the defendant's conduct in the past." Express Publishing, 312 U.S. at 435. The district court appropriately exercised its discretion here since Sprecher had a controlling, fiduciary role in World Wide equivalent to an officer or director's role and his security laws violations were flagrant and deliberate, making it likely that he would commit similar future violations if holding an officer or director position. Although the court imposed the bar pursuant to the Remedies Act of 1990, we can affirm on other grounds. We therefore do not reach the issue of the retroactive application of the Remedies Act of 1990.
 
 
 
 *
 Circuit Judge Tatel did not participate in this order