## UNITED STATES v. MICHAEL et al.
### No. 9473.

United States Court of Appeals
Third Circuit.

Reargued Nov. 21, 1949.

Decided Dec. 29, 1949.
Rehearing Denied March 13, 1950.
Writ of Certiorari Denied June 5, 1950.
See 70 S.Ct. 1023.

Robert T. McCracken, Philadelphia, Pa. (George G. Chandler, Philadelphia, Pa., J. Julius Levy, Scranton, Pa., on the brief), for appellant.

M. H. Goldschein, Washington, D. C., for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

George L. Fenner, Sr. and Harry S. Knight were convicted in the District

Court for the Middle District of Pennsylvania under an indictment in which they were charged jointly with Robert Michael, Homer N. Davis and Donald M. Johnson of violating Section 29, subdivision a, of the Bankruptcy Act, 11 U.S.C.A. § 52, sub. a, and of conspiring to commit the substantive offenses charged. Michael pleaded guilty and Davis and Johnson were acquitted. Knight alone appealed. Concluding that the evidence did not support the charges made in the indictment we reversed his conviction and directed his acquittal. 3 Cir., 169 F.2d 1001. On certiorari, the Supreme Court disagreed with our view of the evidence, reversed our judgment and remanded the case to us for further proceedings. 336 U.S. 505, 69 S.Ct. 704. We thereupon set the case down for reargument of certain other questions which the appellant had raised and which neither this court nor the Supreme Court had decided. These questions have now been fully reargued and we accordingly proceed to their consideration.

The first is the appellant's contention that the district court erred in dismissing his plea in abatement which was based upon the fact, as he alleges, that the indictment was not found within a period of three years after the commission of the offense. Section 29, subdivision d, of the Bankruptcy Act, as amended, and in force when this indictment was acted on, provided: "d. A person shall not be prosecuted for any offense arising under this act unless the indictment is found or the information is filed in court within three years after the commission of the offense: * * *." 52 Stat. 856.

The factual basis of this contention will be stated briefly. The offense was alleged to have been committed on or about April 24, 1942. On April 20, 1945 the grand jury brought the indictment in question into an open session of the district court. It was endorsed "A True Bill" by the foreman. The indictment was handed by the grand jury to the judge of the district court who, without publicly stating its contents or the names of the accused, sealed it in an envelope and handed it to the clerk with an order directing that it be impounded. The clerk made a notation on the criminal docket of the order for impoundment without indicating the names of the defendants or the nature of the offenses charged and kept the indictment in his safe thus impounded until June 13, 1945. On that date the sealed indictment was delivered by the clerk to the judge of the district court in open court who thereupon opened it and delivered it to the clerk with instructions to file it, as of April 20, 1945. The clerk thereupon publicly announced the indictment, regularly filed it in his office and made the appropriate entries on his criminal docket.

■ The appellant argues that in view of its impoundment the indictment was not "found" within the meaning of the statute of limitations prior to April 24, 1945, the last day of the statutory period of three years. We do not agree. The finding of an indictment is the function of the grand jury. When an indictment has been submitted to the grand jury by the government attorney it becomes the duty of that body to find it to be a true bill of indictment and so return it to the district court, if at least twelve of the grand jurors concur in regarding the evidence presented by the government as making out a prima facie case of the offense charged. If the requisite number of grand jurors decline to find the indictment to be a true bill it is to be returned as ignored. When the grand jury has found an indictment to be a true bill and has completed its action thereon by returning the indictment, duly endorsed as a true bill by its foreman, to the district court in open session, its function has been fulfilled. The indictment has been "found" within the meaning of the statute of limitations regardless of what the district court may thereafter do or fail to do with respect thereto. See Criminal Procedure Rule 6 (f), 18 U.S.C.A.

■ Here the grand jury completed its finding and return of the indictment on April 20, 1945, four days before the expiration of the period fixed by the statute of limitations. The indictment was there-

fore not barred by the statute. The appellant contends, however, that the impounding of the indictment for 54 days during which time the period fixed by the statute of limitations expired was unlawful and substantially prejudicial to him. We see no basis for this contention. Criminal Procedure Rule 6(e) authorizes indictments to be kept secret during the time required to take the defendant into custody.[1] If such secrecy may lawfully be imposed in that situation we see nothing unlawful in the court imposing secrecy in other circumstances which in the exercise of a sound discretion it finds call for such action. Nor do we find that the appellant was in fact prejudiced by the delay of 54 days in making public the indictment against him. His allegations in this regard are wholly general and there is no suggestion of any instance in which the delay impaired or destroyed any item of proof needed for his defense. We conclude that the district court did not abuse its discretion in impounding the indictment and that it, therefore, did not err in dismissing appellant's plea in abatement.

The appellant's remaining contentions relate to certain alleged errors in the conduct of the trial. We need to consider only certain statements of government counsel in his closing address to the jury since we agree with the appellant that under the special circumstances of this case they constitute ground for a new trial. The appellant Knight is a member of the bar of long standing. At the time of the occurrences involved in this case he was an officer of the American Bar Association. Counsel for the government seemed to center their fire on him and to lay great emphasis upon his position as a lawyer and his failure to live up to the high standards of his position as a leader of the bar. This culminated in statements in the closing argument of government counsel to the jury of which the following are examples:

"It has been said here repeatedly that Harry Knight has been for years an important officer of the American Bar Association. Everyone knows, every lawyer knows that the American Bar Association has drafted and promulgated a canon of ethics to which every lawyer is bound. It was the duty of Harry Knight as an officer of this court, it was his duty as an officer of the American Bar Association, it was his duty as a lawyer upon knowing that a diversion of funds was taking place, it was his obligation to report it to the Court, his obligation was no less than that of Robert Michael's. * * *

* * * * * *

"* * * And again I say, under his oath as a member of the Bar, under his oath as a member of the Bar of this Court, under his obligation as an officer of the American Bar Association to adhere to its canon of ethics, Harry Knight was obligated to report to the Court that a false document had been submitted, upon which the Court might base its allowances.

* * * * * *

"I am not going to take any more of your time, ladies and gentlemen; the only thing I want to say now is that the importance of this case is very great. Involved here is the protection of the functions of the courts of the United States, particularly in its bankruptcy functions. Involved here is not only the integrity of the courts, but the integrity of the Bar of this State, the integrity of lawyers generally. That protection we are entitled to hear from your lips, a condemnation of what the unscrupulous lawyer will do."

Not only did the trial judge refuse the appellant's motion for the withdrawal of a juror by reason of these and similar remarks but he failed to correct them by making clear to the jury in his charge that their sole duty with respect to the appellant was to determine whether he was guilty of the offenses charged in the indictment, that the appellant's duty to obey the

---

1. While that rule was not in force at the time of the impoundment of the indictment in this case it continued the previous practice in this regard. See paragraph

3 of Notes of Advisory Committee on Rules of Criminal Procedure to subdivision (e) of Rule 6, 18 U.S.C.A.

58

provisions of the Bankruptcy Act therein charged to have been violated was no greater than that of his codefendants, and that they, the jury, were not charged with determining by their verdict whether the appellant had been guilty of professional misconduct.

█ We think that there is strong indication that the jury was misled by these statements of government counsel into considering the appellant's professional misconduct instead of his criminal guilt. For they acquitted Johnson, whom government counsel admitted at our bar they regarded as the moving spirit and sole beneficiary of the conspiracy charged, and Davis, who was the corporate treasurer who actually made the payment in question, and convicted only Fenner and Knight, who were the lawyers for the corporation which made the payment. The verdict is difficult, if not impossible, to reconcile with the evidence. Indeed counsel for the government frankly stated at our bar that he and his associates could not reconcile it but thought that the jury had acquitted those defendants against whom they had the strongest testimony and convicted those against whom they did not have such strong testimony. "In these circumstances", as the Supreme Court said in Berger v. United States, 1935, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314, "prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence."

The judgment of the district court will be reversed and the cause will be remanded for a new trial.

KALODNER, Circuit Judge (dissenting).

I concur with the view expressed by the majority that the indictment was "found" within the meaning of the statute of limitations.

I dissent, however, with respect to the conclusion of the majority that the remarks of government counsel were so prejudicial as to constitute grounds for a new trial. I see no merit in the appellant's remaining contentions and for that reason would affirm.