**UNITED STATES of America,**
**Plaintiff,**

v.

**Douglas G. THOMPSON and Roger D. Thompson, Defendants.**

Nos. 99–40019–01–DES,
99–40019–02–DES.

United States District Court,
D. Kansas.

June 9, 2000.

Gregory G. Hough, Assistant United States Attorney, for plaintiffs.

Melody Evans, Assistant Federal Public Defender, and Debra Egli James of Hampton & Royce L.C., Salina, KS, for defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

On May 22, 2000, the court held a hearing on nine motions and took all the motions under advisement.[1] The court has considered the briefs and oral arguments of all parties. The defendants' Motion to Dismiss for Post–Indictment Delay (Docs. 43 and 53) is granted. Because the action is dismissed, the court does not need to rule on the remaining motions.

## I. BACKGROUND

Defendants have moved to dismiss a nine count indictment. The indictment charges that Douglas ("Doug") Thompson and Roger Thompson and others knowingly and unlawfully combined, conspired, confederated, and agreed to execute a scheme to defraud the Small Business Administration ("SBA"), an agency of the United States, use of the mail in furtherance of the scheme, and engaging in monetary transactions in criminally derived property, in violation of Title 18, U.S.C., §§ 2, 371, 1341, and 1957. Because the first alleged criminal act occurred on March 1, 1994, the five year statute of limitations expired on March 1, 1999. *See* 18 U.S.C. § 3282. The indictment was returned by the grand jury on February 10, 1999, one month before the statute of

---

**1.** Defendants filed a Motion to Disclose Expert Testimony (Docs. 31 and 40), Motion for Bill of Particulars (Docs. 34 and 36), Motion to Dismiss Counts 2, 3 and 4 (Docs. 38 and 50), Motion to Dismiss Counts 5, 6, 7, 8 and 9 (Docs. 39 and 49), Motion to Dismiss for Post–Indictment Delay (Docs. 43 and 53), Motion for Disclosure of Impeachment Evidence (Docs. 44 and 48), Motion to Dismiss Count 1 (Docs. 45 and 51), and Motion to Join Motions Filed By Co-defendant (Doc. 52). The government filed a Motion for Discovery (Doc. 54).

limitations was about to expire. Without any discussion on the record, Judge Sam A. Crow ordered the indictment sealed. The indictment was unsealed eleven months later on January 18, 2000.

The charges in this case stem from transactions which occurred between the SBA and Plaza Speedway, a business owned by brothers Doug and Roger Thompson. Defendants owned fifty percent of the corporation, and Bob More owned the other fifty percent. Plaza Speedway was formed in 1985 for the purpose of operating and leasing a dirt track racing facility near Junction City, Kansas. During June 1993, the Plaza Speedway property was significantly damaged by flooding. On January 18, 1994, defendants applied for a re-building loan from the SBA's Disaster Loan Program. Defendants made statements regarding the cost of necessary repairs. The SBA approved and issued a loan for approximately $75,000 to pay for repairs to the Plaza Speedway property.

In 1993, one of Plaza Speedway's tenants contacted the state health department and requested a groundwater assessment. The tests revealed that the water was contaminated. The contamination was allegedly caused by multiple chemical fire extinguishing practice sessions conducted over a period of years by the Army at Fort Riley. On October 13, 1995, Plaza Speedway filed an administrative claim with the Army for diminished property value, loss of revenue, and costs in developing an alternative water supply caused by the water contamination. The dispute was not resolved, and defendants filed a civil action for damages on behalf of Plaza Speedway on August 15, 1997.

During discovery, the depositions of Doug and Roger Thompson were taken on March 18, 1998, and April 22, 1998, respectively. The government claims it became apparent during these depositions to the United States Attorney defending the civil action that there was evidence of criminal activity on the part of Doug and Roger Thompson in connection with the SBA loan

to Plaza Speedway. According to the government, the SBA loan proceeds were to be used "soley to rehabilitate or replace" Plaza Speedway property. The loan agreement prohibited Plaza Speedway from using the loan proceeds to pay officers of the company for performing work. The SBA refused to make defendants' proposed modifications to the agreement, including that Plaza Speedway perform all the work and use the loan proceeds to pay off an outstanding loan it owed to First State Bank. The evidence suggested that defendants used the loan money to buy out fifty percent shareholder, Bob More, and refinance the loan to First State Bank. The evidence also suggested defendants initiated a sham transaction in which Bret Young signed a statement, drafted by Doug Thompson, that his company, "Young Construction," would repair the Plaza Speedway property for $77,500. This statement was provided to the SBA in order to receive the loan.

Although the United States Attorney in the civil action knew the matters required further investigation in March 1998, a criminal file was not officially opened until February 2, 1999. A sealed indictment was returned on February 10, 1999, one month before the statute of limitations expired. The indictment was unsealed eleven months later on January 18, 2000. During this time, Plaza Speedway continued to operate. The defendants continued their daily life in the Junction City, Kansas, area, unaware of the indictment. In June 1999, Doug Thompson moved his law practice from Abilene, Kansas, to Chapman, Kansas. During the move, Doug Thompson destroyed files and documents that were more than five years old, including correspondence, phone logs, notes about conversations, tax records, and expenditures regarding the SBA loan. Doug Thompson testified that he would not have destroyed these records if he had known of the pending criminal charges.

The civil action was scheduled to begin March 21, 2000. When the indictment was

unsealed on January 18, 2000, the civil trial was continued. At the May 2000 hearing ("hearing"), Plaza Speedway's counsel in the civil action testified that he would attempt to continue the civil trial until the conclusion of the criminal trial.

## II. ANALYSIS

 Defendants present five arguments in support of their motion to dismiss the indictment: (1) Statute of Limitations, (2) Speedy Trial Act, (3) Speedy Trial Clause of the Sixth Amendment, (4) Due Process Clause of the Fifth Amendment, and (5) Federal Rule of Criminal Procedure 48. The delay in this case results from sealing the indictment beyond the statute of limitations. Courts addressing delay caused by the sealing of an indictment past the statute of limitations have rejected arguments to dismiss an indictment based on the Speedy Trial Act[2] and Rule 48.[3] Because the court finds that the action should be dismissed under the statute of limitations, the court does not need to address defendants' sixth amendment and due process arguments.

The filing of a sealed indictment within the statutory period may serve to toll the statute of limitations even if the indictment is not unsealed until after the period has expired, provided the indictment was sealed for a legitimate prosecutorial purpose. *United States v. Watson*, 599 F.2d 1149, 1154 (2nd Cir.1979) (citing *United States v. Michael*, 180 F.2d 55, 56–57 (3rd

Cir.1949)). Defendants argue that the indictment was not sealed for a proper purpose and they suffered prejudice. When the sealing of an indictment is challenged, the government must "explain and support the legitimacy of its reasons for sealing the indictment." *United States v. Srulowitz*, 819 F.2d 37, 41 (2nd Cir.1987).

 The court must engage in a three-part inquiry to determine whether the sealed indictment tolled the statute of limitations: (1) Was the original decision to seal the indictment proper?; (2) If properly sealed, was the length of time the indictment was sealed reasonable?; and (3) Was the defendant prejudiced by the sealing of the indictment? *See United States v. Shell*, 961 F.2d 138, 141–143 (9th Cir.1992); *Srulowitz*, 819 F.2d at 40–41. The parties presented substantial evidence concerning this inquiry at the hearing.

### A. Was the Indictment Properly Sealed?

To toll the statute of limitations, the initial sealing must be proper. *United States v. Lakin*, 875 F.2d 168, 170 (8th Cir.1989); *United States v. Southland Corp.* 760 F.2d 1366, 1379–80 (2nd Cir. 1985). The authority to place an indictment under seal is found in Federal Rule of Criminal Procedure 6(e)(4), which provides that an indictment may be sealed until the defendant is in custody or has been released pending trial. A few courts

---

**2.** The Speedy Trial Act provides that a defendant pleading not guilty must be brought to trial within seventy days from either "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Defendants were indicted on February 10, 1999, but did not appear before a judicial officer until March 7, 2000. Because defendants appearance before a judicial officer was the later date, the seventy-day period did not begin to elapse until March 7, 2000. Thus, defendants have no claim of a Speedy Trial Act violation. *See United States v. Kalady*, 941 F.2d 1090, 1094 (10th Cir. 1991) (citing *United States v. Snyder*, 707 F.2d

139, 142 (5th Cir.1983), which held the seventy-day period under 18 U.S.C. § 3161(c)(1) starts to run on date of arraignment rather than the date of indictment when the indictment precedes the arraignment).

**3.** Federal Rule of Criminal Procedure 48(b) allows the court to dismiss the indictment for failure to prosecute "if there is unnecessary delay in bringing the defendant to trial." The Supreme Court has held that Rule 48(b) only applies to post-arrest delay. *United States v. Marion*, 404 U.S. 307, 319, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Revada*, 574 F.2d 1047, 1048 (10th Cir.1978). Rule 48(b) simply does not apply to defendants' complaint of post-indictment, pre-arrest delay.

have held that obtaining custody over a defendant or co-defendants is the only valid reason for sealing an indictment. *See United States v. Slochowsky*, 575 F.Supp. 1562, 1568 (E.D.N.Y.1983) ("this court is of the opinion that Rule 6(e)(4) circumscribes the Government's power to seal an indictment"); *United States v. Sherwood*, 38 F.R.D. 14, 20 (D.Conn.1964) (concluding that the sealing of an indictment must be "exercised only to accomplish the limited purposes authorized by the criminal rule for which it was designed"). The more predominate view is that an indictment may be sealed for any legitimate prosecutorial purpose. *United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir.1995); *Lakin*, 875 F.2d at 171; *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir.1986); *United States v. Edwards*, 777 F.2d 644, 647–48 (11th Cir.1985); *Michael*, 180 F.2d at 56–57.

■ The government claims that its proper purpose is twofold: (1) to conduct necessary "follow-up" investigation and (2) to avoid influencing the on-going civil suit and the appearance that the prosecution was brought in retaliation against defendants for filing the civil litigation against the government.

The need for investigation is recognized as a legitimate prosecutorial purpose for sealing an indictment. *See Bracy*, 67 F.3d at 1426; *Lakin*, 875 F.2d at 171. However, the government must demonstrate to the court that the need for investigation actually existed. See *Sharpe*, 995 F.2d at 52. Defendants claim the government completed discovery prior to obtaining the indictment, through its discovery in the civil case. At the hearing, FBI Special Agent Rick Rindt testified concerning the government's investigation. Agent Rindt stated that he was informed of the need to open a criminal matter in January 1999, by prosecutor Rich Hathaway, Senior Litigation Counsel, who provided Agent Rindt with the facts of the case. Agent Rindt admitted that no investigation was conducted by the FBI before the FBI opened

a criminal file on February 2, 1999. According to Agent Rindt, the only specific information sought in the investigation conducted after the indictment was sealed on February 10, 1999, was SBA records. The government could have obtained these records at anytime after the discovery of a possible criminal matter in March of 1998, including after the indictment was returned. There was no fear that defendants could destroy the records had the indictment been made public. The government did not need to seal the indictment to obtain the SBA records.

No other need for investigation was offered by the government. Agent Rindt testified that generally all criminal matters are subject to "on-going" investigation by the FBI until trial is over, such as interviews and gathering documents. However, Agent Rindt admitted this investigation involved "trial preparation sorts of things." If the court were to accept "trial preparation" investigation as sufficient to justify sealing an indictment, the government could seal all indictments because every criminal case requires trial preparation. This type of investigation is not a proper prosecutorial purpose and does not justify sealing an indictment.

A review of the affidavits filed by the government reveals that the government did not seal the indictment to conduct follow-up investigation. The affidavits were signed by three attorneys in the United States Attorney's office who handled the criminal case.[4] The only reason for sealing the indictment mentioned by the attorneys is the need to not disturb or influence the civil litigation. Assistant United States Attorney James Flory specifically stated, "I recall that the sole purpose of sealing the indictment at that time was to avoid any appearance that the commencement of the criminal prosecution was as an attempt to influence a pending civil action." Agent Rindt also testified that it was his understanding that the sole pur-

---

**4.** Affidavits were signed by Rich Hathaway, Senior Litigation Counsel, James E. Flory, Assistant United States Attorney, and T.G. Luedke, Assistant United States Attorney.

pose for sealing the indictment was to avoid interference with the civil case. In light of these statements and the testimony, it is clear to the court that the indictment was not sealed to conduct necessary follow-up investigation.

The government has not demonstrated to the court that the need for investigation existed. The need to obtain SBA records did not justify sealing the indictment. The need for general "trial preparation" investigation also does not justify sealing the indictment. There is no evidence to suggest that an unsealed indictment would have adversely affected the course of the investigation. Agent Rindt testified that there was no part of his investigation that could not have been conducted had the indictment been unsealed. He also testified that his investigation would not have been impaired in any way had the indictment been unsealed. Under these facts, the government's need for investigation is not a legitimate prosecutorial purpose for sealing indictment.

The court must also determine whether the desire not to influence the civil litigation and to avoid the appearance of retaliation is a legitimate prosecutorial purpose for sealing an indictment. The court finds the stated reason is not a legitimate prosecutorial objective in either fact or law.

■ As a factual matter, the government has not shown that it had the desire not to influence the civil litigation and avoid the appearance of retaliation. The government waited two months before the civil trial was scheduled to begin on March 21, 2000, to unseal the indictment. A more disruptive time than announcing criminal prosecution on the eve of trial is hardly imaginable. Unsealing the indictment at that time obviously disrupted the civil case. At the hearing, former United States Attorney, Randy Rathbun, Plaza Speedway's counsel in the civil litigation, testified that although the SBA loan is irrelevant to the civil litigation, there are too many ways the civil trial could be used to elicit incriminating statements. Both defendants were subpoenaed to testify at the civil trial. A continuance was requested and granted. Mr. Rathbun testified that he has informed the judge of his intent to continue the civil case until the criminal case is finished. If disrupting and influencing the civil suit was a genuine reason for sealing the indictment, the government would not have waited to unseal the indictment two months before the civil trial was to commence.

Unsealing the indictment at that time creates the appearance of retaliation. The government discovered possible criminal conduct in March 1998, but did not proceed with criminal charges until the last possible moment. According to the government, they hoped the civil litigation would end. By the end of 1998, the court had not yet ruled on two of the government's motions for summary judgment. The court ruled on one of the motions for summary judgment in January 1999. By waiting until the end of the limitations period before prosecuting the defendants, the government forced itself to seek an indictment within two months of the court denying its motion for summary judgment. When the government obtained the sealed indictment on February 10, 1999, the court had yet to rule on the government's second motion for summary judgment. The court announced its order denying the government's second motion for summary judgment nine months later, in November 1999. This order also announced that trial would commence on March 21, 2000. The government finally moved to unseal the indictment in January 2000, two months before the civil trial was to begin. Sealing the indictment for eleven months, and unsealing the indictment on the eve of the civil trial creates an appearance of retaliation far greater than simply bringing the indictment against the defendants within the statute of limitations period. Therefore, the court does not find that the government's stated reason to avoid influencing the civil litigation is factual.

■ As a legal matter, sealing an indictment past the statute of limitations to

avoid influencing civil litigation is unjustified. There is no case law supporting such a proposition. When courts are faced with parallel civil and criminal actions, the courts' options include staying the civil action, sealing the civil discovery, or doing nothing at all. *See Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions,* 98 Harv.L.Rev. 1023, 1036 (1985). The court could find no case law suggesting that the court should stay a criminal action to avoid influencing a civil action. Criminal actions take precedence over civil actions in even the most basic respects, such as scheduling. *See* Fed. R.Crim.P. 50(a). At least one other court addressing this issue has held pursuit of a collateral matter is not a proper legitimate prosecutorial reason for sealing an indictment. *See United States v. Rogers,* 781 F.Supp. 1181, 1190–91 (S.D.Miss.1991). In *Rogers,* the court held that sealing an indictment charging bribery of a public official for thirteen months so the government could pursue an income tax investigation in the hope that the investigation would result in an indictment that could be joined with the bribery indictment, did not serve a legitimate prosecutorial objective. *Id.*

This court finds that sealing an indictment to pursue a collateral[5] civil matter is not a legitimate prosecutorial objective. An indictment should not be hidden from the defendants beyond the statute of limitations simply because the progression of a civil case might be influenced. The interest of the United States Attorney's office in avoiding influencing a civil case or the appearance of retaliation is not as strong as the criminal defendant's interest in receiving notice of the charges within the statute of limitations and preparing his defense. Allowing the government to extend the statute of limitations to pursue civil litigation, even for a short period of time, would seriously undermine the role of the statute of limitations which has traditionally served in protecting criminal defendants against the power of the government. *Sherwood,* 38 F.R.D. at 20. The court will not condone "a policy of lying in wait with a sealed indictment, after the criminal statute of limitations has run," to avoid influencing a collateral civil matter. *Id.*

The court finds that neither of the government's stated reasons for sealing are valid. Under the facts of this case, conducting follow-up investigation and avoiding influencing the civil litigation are not legitimate prosecutorial objectives.

**B. Length of Period of Sealing.**

■ Even if the government's reasons for sealing were proper, an indictment may be sealed only for a "reasonable duration under the circumstances." *Sherwood,* 38 F.R.D. at 20. *See Shell,* 961 F.2d at 142 ("an indictment may remain sealed beyond the limitation period, but only for a reasonable time"). "The policy of repose underlying the statute [of limitations] demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied." *Watson,* 599 F.2d at 1155. The government did not need eleven months to accomplish either of its stated prosecutorial objectives.

As to the need for follow-up investigation, the only necessary investigation identified by Agent Rindt to justify the sealing was the need to obtain the SBA records. The government could have easily and quickly obtained a subpoena and collected these documents, probably within two months. The government did not present any evidence that obtaining the SBA records was difficult or took an unusually long period of time. An eleven month delay to obtain such information is unreasonable.

---

**5.** The court points out that the criminal charges were not directly related to the civil litigation. At the hearing, Randy Rathbun, Plaza Speedway counsel, testified that the SBA loan was irrelevant to the issues in the civil suit and he objected to deposition questions concerning the SBA loan as irrelevant. However, even if the criminal charges were directly related to the civil litigation, the court's analysis would not change for the policy reasons stated by the court.

**1310**

An eleven month delay to avoid influencing the civil action and the appearance of retaliation is also unreasonable. The civil litigation was still at the summary judgment stage at the time the indictment was sealed on February 10, 1999. At that point, it was unclear when the civil trial would commence. Because there was no apparent end to the civil litigation, it was unreasonable to seal the indictment for any length of time because unsealing the indictment anytime after the statute of limitations expired would, if not disrupt the civil litigation, create the appearance of retaliation. If the government had waited until the civil litigation was completed, the appearance of retaliation would be even greater, as the indictment would have been sealed until March 2000, over fourteen months. Any delay beyond the statute of limitations was unreasonable.

Sealing the indictment for eleven months to accomplish either of the government's stated prosecutorial objectives was unreasonable.

**C. Actual Prejudice.**

Although the statute of limitations will toll only if the initial sealing of the indictment is proper, some courts also require a showing of prejudice before dismissing an indictment. *See United States v. Mitchell,* 769 F.2d 1544, 1547–48 (11th Cir.1985) (holding an indictment that was properly sealed but for an unreasonable length of time was insufficient to dismiss the indictment absent actual prejudice resulting from the delay); *United States v. Heckler,* 428 F.Supp. 269, 272–73 (dismissing an indictment when the government did not have a proper purpose for sealing and the defendants demonstrated actual prejudice resulted from the delay). The Tenth Circuit has not ruled on whether a defendant must show prejudice for dismissal of the indictment when the indictment was improperly sealed beyond the statute of limitations or sealed for an unreasonable length of time.

 The court finds there was no legitimate prosecutorial need for sealing the indictment in this case and the statue of limitations expired. As the indictment was not "found" within the statute of limitations, the defendant does not need to show actual prejudice resulted from the delay in unsealing the indictment. *See Watson,* 599 F.2d at 1156 n. 4 ("even if the defendant shows no prejudice, delay in unsealing the indictment would be unreasonable if there were no legitimate prosecutorial need for it"); *United States v. Cosolito,* 488 F.Supp. 531, 537 (D.Mass.1980) (citing *Watson*); *Sherwood,* 38 F.R.D. at 20 (when indictment improperly sealed beyond statute of limitations, "the Court presumes prejudice and finds as a matter of law, that the rights of the defendants ... have been prejudiced"). To the extent a showing of actual prejudice would be required to dismiss the indictment, the court finds the defendants have met this burden.

At the hearing, defense counsel described the fraud case as a "communications case" which focuses on communications between the defendants and the SBA, which occurred in early 1994. The parties' understanding of the terms of the SBA loan, evidenced by phone conversations and written documents, is the core of the prosecution's case. At the hearing, Defendant Doug Thompson testified that he transacted all the business and communicated with the SBA on behalf of Plaza Speedway. He kept records of all communications concerning the SBA loan and never gave any copies to his brother Roger Thompson. All records concerning the SBA loan were kept at his office in Abilene, Kansas. In June 1999, Doug moved his office to Chapman, Kansas. This move had been planned for over a year.

In the process of the move, he ordered that the records five years or older be destroyed, including records of the SBA loan. Time record day sheets with notes as to each phone conversation with the SBA, letters, payment records, expenditures and tax information were all destroyed in the move. Doug testified that he did not remember writing two letters

produced by the SBA. He also testified that he had phone conversations not listed in the SBA phone log, specifically, an important conversation on February 28. Doug also remembers correspondence related to the January 28th letter, not contained in the SBA files. Prior to June 1999, defendants had a complete SBA file and all their notes and other information available to them to support their defense. As this is a communications case, it is necessary for the defendants to remember conversations and correspondence which occurred over six years earlier. Defendants have demonstrated actual prejudice resulted from the destruction of documentation and memory loss.

Because there was no legitimate prosecutorial need to seal the indictment and the defendants can show prejudice, the indictment is dismissed with prejudice.

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' Motion to Dismiss for Post–Indictment Delay (Docs. 43 and 53) is granted. The indictment is dismissed with prejudice.