**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Douglas G. THOMPSON; Roger D. Thompson, Defendants–Appellees.**

**No. 01–3014.**

United States Court of Appeals, Tenth Circuit.

April 16, 2002.

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, Department of Justice, Washington, DC, (Jackie N. Williams, United States Attorney, District of Kansas; James E. Flory, Acting United States Attorney, District of Kansas; Nancy Landis Caplinger, Assistant United States Attorney, District of Kansas, Topeka, KS, with him on the brief), for Plaintiff–Appellant.

Debra Egli James of Hampton & Royce, L.C., Salina, KS, for Defendant–Appellee Douglas G. Thompson.

Melody Evans, Assistant Federal Public Defender, District of Kansas, Topeka, KS, (David J. Phillips, Federal Public Defender, District of Kansas, Topeka, KS, with her on the brief), for Defendant–Appellee Roger D. Thompson.

Before SEYMOUR, LUCERO, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

## I. INTRODUCTION

The United States, plaintiff-appellant, has appealed an order of the United States District Court for the District of Kansas dismissing with prejudice an indictment against Roger D. Thompson and Douglas G. Thompson, defendants-appellees, on statute of limitations grounds. The government asserts that it did not violate the applicable statute of limitations and that the primary issue involves instead a violation of Rule 6(e)(4) of the Federal Rules of

Criminal Procedure. This court exercises jurisdiction pursuant to 18 U.S.C. § 3731.

Because this court concludes that an indictment is "found" under 18 U.S.C. § 3282 when the grand jury votes to indict and the foreperson subscribes it as a true bill, the statute of limitations was satisfied. The sealing of the indictment, however, violated Federal Rule of Criminal Procedure 6(e)(4) and must be analyzed for harmless error. Applying harmless error, this court **affirms.**

## II. BACKGROUND

The relevant facts are undisputed in this case. The defendants are brothers and co-owners of a business called Plaza Speedway, an operator and lessor of a dirt-track racing facility near Junction City, Kansas. When Plaza Speedway was formed in 1985, the defendants owned fifty percent of the corporation and Bob More, who was not indicted, owned the other fifty percent. In 1993, flooding damaged the Plaza Speedway property. The defendants subsequently applied for and received a $75,000 loan from the Small Business Administration ("SBA"), a federal agency, to pay for the repairs to the property.

In an unrelated matter, the defendants filed a civil action against the United States in 1997. During the defendants' depositions in the civil litigation, government attorneys became suspicious of the defendants' use of the SBA loan. The evidence in the civil litigation suggested that the defendants used the SBA loan proceeds to buy Bob More's share of the business, in contravention of the loan agreement with SBA. The evidence also suggested that the defendants initiated a sham transaction with Bret Young, who was not indicted. Young signed a statement drafted by Douglas Thompson which said his company, Young Construction, would repair the flood damage to the Plaza Speedway property. This statement was used to help obtain the SBA loan. Based on the evidence developed in the civil litigation, prosecutors began a criminal investigation of the defendants.

As a result of the criminal investigation, a federal grand jury returned a nine-count indictment on February 10, 1999. The indictment charged the defendants with conspiracy to defraud an agency of the United States (Count 1), mail fraud (Counts 2–4), and engaging in monetary transactions in property derived from criminal activity (Counts 5–9). The undisputed length of the statute of limitations for all indicted charges is five years.

Upon the return of the indictment and at the request of the government, the district court ordered the indictment sealed without a discussion on the record. The indictment was unsealed eleven months later, on January 18, 2000. On appeal, the government does not contest the district court's conclusion that the last overt act in the conspiracy occurred on April 4, 1994. Thus, the statute of limitations on the conspiracy charge expired on April 4, 1999 unless tolled. The limitations period on the remaining substantive offenses expired on or before April 6, 1999. The defendants do not challenge the district court's determination that the date on which the grand jury returned the indictment, February 10, 1999, preceded the expiration of all statutes of limitations. Thus, the indictment was returned approximately two months before the expiration of the statute of limitations, but was not unsealed until nine months after the statute expired unless tolled.

The defendants brought a motion to dismiss the indictment on several grounds, including a violation of the applicable statute of limitations. The district court conducted a hearing on the motion to dismiss in which several witnesses, including de-

fendant Douglas Thompson, testified. In a written memorandum and order, the district court explained that "[t]he filing of a sealed indictment within the statutory period may serve to toll the statute of limitations even if the indictment is not unsealed until after the period has expired, provided the indictment was sealed for a legitimate prosecutorial purpose." *United States v. Thompson*, 104 F.Supp.2d 1303, 1306 (D.Kan.2000).

At the hearing, the government offered two justifications for sealing the indictment: (1) to conduct further investigation into the criminal charges and (2) to avoid influencing the ongoing civil suit and the appearance that the government prosecuted the Thompsons in retaliation for filing the civil litigation against the government. The district court concluded that neither of the reasons justified sealing the indictment. On appeal, the government concedes that the indictment was not sealed for a proper purpose.

The district court also concluded that although the defendants need not show actual prejudice in order for the district court to dismiss the indictment, the defendants had demonstrated prejudice as a result of the violation of the statute of limitations. *See id.* at 1310–11. The district court then supported its conclusion with the following factual findings:

> At the hearing, defense counsel described the fraud case as a "communications case" which focuses on communications between the defendants and the SBA, which occurred in early 1994. The parties' understanding of the terms of the SBA loan, evidenced by phone conversations and written documents, is the core of the prosecution's case. At the hearing, Defendant Doug Thompson testified that he transacted all the business and communicated with the SBA on behalf of Plaza Speedway. He kept records of all communications concerning the SBA loan and never gave any copies to his brother Roger Thompson. All records concerning the SBA loan were kept at his office in Abilene, Kansas. In June 1999, Doug moved his office to Chapman, Kansas. This move had been planned for over a year.

> In the process of the move, he ordered that the records five years or older be destroyed, including records of the SBA loan. Time record day sheets with notes as to each phone conversation with the SBA, letters, payment records, expenditures and tax information were all destroyed in the move. Doug testified that he did not remember writing two letters produced by the SBA. He also testified that he had phone conversations not listed in the SBA phone log, specifically, an important conversation on February 28. Doug also remembers correspondence related to the January 28th letter, not contained in the SBA files. Prior to June 1999, defendants had a complete SBA file and all their notes and other information available to them to support their defense. As this is a communications case, it is necessary for the defendants to remember conversations and correspondence which occurred over six years earlier. Defendants have demonstrated actual prejudice resulted from the destruction of documentation and memory loss.

*Id.* at 1310–11.

## III. DISCUSSION

### A. When an Indictment is "Found"

■ This court generally reviews an order dismissing an indictment for abuse of discretion. *See United States v. Wood*, 6 F.3d 692, 694 (10th Cir.1993). If, however, the district court dismisses the indictment based on its interpretation of governing

statutes, that interpretation is a legal determination reviewed *de novo. See id.*

The applicable statute of limitations for the indicted crimes provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

This court has not previously addressed the issue of when an indictment is "found" under 18 U.S.C. § 3282. The government submits that an indictment is "found" by an act of the grand jury, and not when the indictment is publicly filed or made known to the defendant. Here, the government argues that sealing of the Thompsons' indictment violated Rule 6(e)(4) of the Federal Rules of Criminal Procedure [1] rather than the applicable statute of limitations. The government argues that this distinction is important because a violation of the statute of limitations normally does not require a showing of prejudice before dismissing the indictment, while a violation of the Federal Rules of Criminal Procedure requires a defendant to demonstrate prejudice under harmless error analysis.

The defendants argue that the government violated the statute of limitations. Because the government concedes it did not seal the indictment for a legitimate prosecutorial purpose, defendants submit that the statute of limitations was not tolled during the time the indictment was sealed and the indictment is not "found" until its contents are made public. Dis-

missal of the indictment should therefore be affirmed.

■■■ As in any case of statutory interpretation, this court begins with the language of the statute itself. *See United States v. Morgan,* 922 F.2d 1495, 1496 (10th Cir.1991). When interpreting statutory language, appellate courts examine the disputed language in context, not in isolation. *See True Oil Co. v. Comm'r of Internal Revenue,* 170 F.3d 1294, 1299 (10th Cir.1999). "This court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (quotation omitted). Because the statute requires that "the indictment is found or the information is instituted" within five years of the alleged crime, cases addressing when an "information is instituted" may inform the meaning of when an "indictment is found."

In *United States v. Burdix–Dana,* the Seventh Circuit addressed the issue of whether filing an information in the district court is sufficient to "institute" an information under § 3282. *See* 149 F.3d 741, 742–43 (7th Cir.1998). Prosecutors in that case filed an information before the expiration of the five-year statute of limitations, but did not return an indictment until after its expiration. *See id.* at 742. The defendant argued that the information was not "instituted" within the meaning of the statute because the government had not obtained a waiver of indictment, a necessary prerequisite to prosecuting on the information. *See id.;* Fed.R.Crim.P. 7(b). In other words, the defendant asserted that an information was not "instituted" until the government could prosecute on

---

1. Rule 6(e)(4) provides in full:
 Sealed Indictments. The federal magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. There-

 upon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.
 Fed.R.Crim.P. 6(e)(4).

the information within the limitations period. *See Burdix–Dana,* 149 F.3d at 742. In rejecting this argument, the court recognized that Federal Rule of Criminal Procedure 7(b) requires the government to obtain the defendant's waiver of indictment before prosecuting on an information. *See id.* at 742–43. The court, however, continued:

> We do not see how [Rule 7(b)] affects the statute governing the limitation period. There is nothing in the statutory language of 18 U.S.C. § 3282 that suggests a *prosecution* must be instituted before the expiration of the five year period; instead the statute states that the *information* must be instituted. We hold that the filing of the information is sufficient to institute it within the meaning of 18 U.S.C. § 3282.

*Id.* at 743. In the context of an indictment, *Burdix–Dana* thus suggests that the closest comparable act to the filing of an information would determine when an indictment is "found."

 Federal Rule of Criminal Procedure 6(f) sheds further light on the meaning of "found" in 18 U.S.C. § 3282. Although the title to a statutory provision is not part of the law itself, it can be used to interpret a statute. *See United States v. Glover,* 52 F.3d 283, 286 (10th Cir.1995).

Rule 6(f), titled "Finding and Return of Indictment," provides in pertinent part: "A grand jury may indict only upon the concurrence of 12 or more jurors. The indictment shall be returned by the grand jury, or through the foreperson or deputy foreperson on its behalf, to a federal magistrate judge in open court." Fed. R.Crim.P. 6(f). Although the rule does not itself use the term "finding," the combination of the title and the text indicates that an indictment is "found" when a grand jury indicts. Nothing in Rule 6(f) suggests that an indictment is "found" when the contents of the indictment are made public or become known to the defendant.[2] Indictments are "found" by grand juries, not by defendants or by the courts. *See Ex parte Bain,* 121 U.S. 1, 9, 7 S.Ct. 781, 30 L.Ed. 849 (1887) ("Being the finding of a jury upon oath, the court cannot amend [the indictment] without the concurrence of the grand jury by whom the bill is found."), *overruled in part by United States v. Miller,* 471 U.S. 130, 138–44, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

The language of 18 U.S.C. § 3282 mentions nothing about the sealing of an indictment, nor does it include a tolling provision. The grand jury's determination of whether or not to "find" an indictment

---

**2.** Although Rule 6(f) requires the return of an indictment "in open court," the defendants do not argue that it requires a public disclosure of the contents of the indictment. This court is not aware of, nor have the defendants brought to the court's attention, any authority in which a court interpreted "in open court" to require divulging of the indictment's contents. Instead, case law suggests the "in open court" requirement mandates only that the grand jurors or the foreperson physically present the indictment in court while the judge is presiding. *See United States v. Lennick,* 18 F.3d 814, 817 (9th Cir.1994) (noting that Rule 6(f) requires indictments be physically handed to a magistrate judge when court is in session); *Renigar v. United States,* 172 F. 646, 648–52, 651 (4th Cir.1909) ("[T]he handing of the indictment to the clerk and the entry of it on the record was all the publication ever intended. It was not meant that the whole world should know who were indicted and for what offenses, because the accused could then escape." (quotation omitted)); Fed.R.Crim.P. 6 advisory committee's note, 1999 amend. (explaining that "the indictment must be presented either by the jurors themselves … or by the foreperson"); 41 Am.Jur. § 31 (2d ed. 1995) ("In order to be a legal accusation, an indictment generally must be brought in open court. In other words, it must be returned into court while the judge is presiding." (footnote omitted)).

does not depend on whether the indictment is sealed. A decision in the Third Circuit supports this conclusion. *See United States v. Michael*, 180 F.2d 55 (3d Cir.1949). The appellant in *Michael* was charged with conspiracy and violating the Bankruptcy Act. *See id.* at 56. The indictment was returned before the expiration of the three-year statute of limitations,[3] and the district court sealed and impounded the indictment. *See id.* The indictment was not unsealed until after the expiration of the statute of limitations. *See id.* In rejecting the appellant's argument that the indictment was not "found" within the statutory period, the Third Circuit stated:

> The finding of an indictment is the function of the grand jury. When an indictment has been submitted to the grand jury by the government attorney it becomes the duty of that body to find it to be a true bill of indictment and so return it to the district court, if at least twelve of the grand jurors concur in regarding the evidence presented by the government as making out a prima facie case of the offense charged. If the requisite number of grand jurors decline to find the indictment to be a true bill it is to be returned as ignored. When the grand jury has found an indictment to be a true bill and has completed its action thereon by returning the indictment, duly endorsed as a true bill by its foreman, to the district court in open session, its function has been fulfilled. *The indictment has been 'found' within the meaning of the statute of limitations regardless of what the district court may thereafter do or fail to do with respect thereto.*

*Id.* (emphasis added).

 This court holds that an indictment is "found" under 18 U.S.C. § 3282 when the grand jury votes to indict the defendant and the foreperson subscribes the indictment as a true bill.[4] Whether the indictment is then sealed is thus irrelevant for statute of limitations purposes. *Accord id.* at 56.

This court recognizes that other circuits are to the contrary and treat the statute of limitations as if it is still running even after the return of a improperly sealed indictment. These circuits have held that the statute of limitations is tolled if the indictment is properly sealed. *See United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir.1995); *United States v. Sharpe*, 995 F.2d 49, 52 (5th Cir.1993) (per curiam).

---

**3.** The applicable statute of limitations in *Michael* contains language almost identical to the one in this case: "A person shall not be prosecuted for any offense arising under this act unless the indictment is found or the information is filed in court within three years after the commission of the offense." *United States v. Michael*, 180 F.2d 55, 56 (3d Cir. 1949).

**4.** Although Federal Rule of Criminal Procedure 6(f) requires both the finding and the return of the indictment in order to be valid, 18 U.S.C. § 3282 mentions nothing about the return of the indictment. The government acknowledged at oral argument, and this court agrees, that an indictment is not valid until its return in open court. *See Lennick*, 18 F.3d at 817; *Renigar*, 172 F. at 648–52. The statute of limitations, however, is satisfied when the indictment is "found," because that is all the statute requires. *See* 18 U.S.C. § 3282. Even though the government may not prosecute a defendant on an indictment "found" but not returned, that does not mean that the statute of limitations continues to run after the indictment is found. *Cf. United States v. Burdix–Dana*, 149 F.3d 741, 743 (7th Cir.1998) (holding that the government satisfied 18 U.S.C. § 3282 by filing an information, even though the government could not prosecute the defendant absent a waiver of indictment under Rule 7(b)). As a practical matter, although the finding and return of an indictment are separate events, an indictment is usually returned almost immediately after its finding by the grand jury.

The logic of these decisions necessarily compels the converse of the rule: the statute is not tolled if the indictment was sealed for an illegitimate purpose. *See, e.g., United States v. Deglomini,* 111 F.Supp.2d 198, 200 (E.D.N.Y.2000) ("In the absence of a proper purpose for sealing, the indictment is considered to be found upon unsealing."); *United States v. Rogers,* 781 F.Supp. 1181, 1190 (S.D.Miss. 1991) ("[W]here an indictment is sealed for an improper purpose, the indictment is not 'found' until the indictment is unsealed."). Other circuits have stated these tolling rules slightly differently, albeit with the same result. *See United States v. Lakin,* 875 F.2d 168, 170 (8th Cir.1989) ("When an indictment is properly sealed, the date of return, rather than the date of unsealing, ordinarily is the time that the indictment is found for purposes of section 3282."); *United States v. Srulowitz,* 819 F.2d 37, 40 (2d Cir.1987) (same).

The defendants urge this court to adopt this alternative approach to analyze the unsealing of indictments after the expiration of the statute of limitations. We decline the defendants' invitation. Under the defendants' proposed rule, when a sealed indictment is "found" depends on the propriety of sealing the indictment under Rule 6(e)(4). *See Lakin,* 875 F.2d at 170; *Srulowitz,* 819 F.2d at 40. Such a rule would necessarily render issues of repose dependent on the subjective intent of a prosecutor in accomplishing the sealing of an indictment rather than an objectively certain date. Moreover, neither the statute nor the rules suggest the date when a sealed indictment is "found" is in any way dependent upon the propriety of that sealing.

## B. Applicability of Rule 6(e)(4)

When an indictment is unsealed, any alleged error must be examined under Federal Rule of Criminal Procedure 6(e)(4), which authorizes the sealing of indictments. Rule 6(e)(4) states that an indictment may be kept secret until the defendant is in custody or has been released pending trial. Fed.R.Crim.P. 6(e)(4). The circuit courts have uniformly recognized that an indictment may be sealed for other reasons, including legitimate prosecutorial purposes and when the public interest otherwise requires it. *See Sharpe,* 995 F.2d at 52 (legitimate prosecutorial purpose and public interest); *United States v. Richard,* 943 F.2d 115, 118–19 (1st Cir.1991) (same); *Lakin,* 875 F.2d at 170 (same); *Srulowitz,* 819 F.2d at 40 (same); *United States v. Ramey,* 791 F.2d 317, 321 (4th Cir.1986) (any legitimate prosecutorial need); *United States v. Edwards,* 777 F.2d 644, 648 (11th Cir.1985) ("[R]easons other than taking defendants into custody validly support the sealing of an indictment."); *United States v. Southland Corp.,* 760 F.2d 1366, 1379–80 (2d Cir.1985) (surveying historical practice which Rule 6(e) codified); *Michael,* 180 F.2d at 57 (holding that a court may seal an indictment for any reason based on its sound discretion).

■ When an indictment is unsealed, a defendant may challenge the propriety of the sealing under Rule 6(e)(4). *See Srulowitz,* 819 F.2d at 41. The government must then set forth its justification for sealing the indictment. *See id.* When the government fails to articulate a legitimate prosecutorial purpose or, as in this case, concedes that sealing did not occur for a proper purpose, it violates Rule 6(e)(4).

■ Ordinarily, violations of the Federal Rules of Criminal Procedure are reviewed for harmless error under Rule 52(a). *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do

to disregard constitutional or statutory provisions."); *see also United States v. Lane,* 474 U.S. 438, 448 n. 11, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) ("[O]n its face, Rule 52(a) admits of no broad exceptions to its applicability."). Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed. R.Crim.P. 52(a). "The Supreme Court has articulated different harmless-error standards, depending on whether the error is of constitutional dimension." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (en banc). The defendants do not allege that an indictment improperly sealed under Rule 6(e)(4) violates a constitutional right. This court thus applies the standard for nonconstitutional errors, which are harmless unless the error had a substantial influence on the outcome of the proceeding or leaves one in grave doubt as to whether it had such effect. *See id.*

The government argues that the harmless error analysis should be conducted only after a trial on the indictment. The government acknowledges, however, that it is possible in some instances to assess harmless error before trial. Indeed, the case the government relies on for its argument for post-trial harmless error analysis conducted a harmless error inquiry in a pretrial setting. *See Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. 2369.

■ In *Bank of Nova Scotia,* the Supreme Court held that harmless error inquiry must be made in assessing the nonconstitutional errors in the grand jury process. *See id.* Dismissal of an indictment for such errors is appropriate "only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision was free from the substantial influence of such violations." *Id.* (quoting and adopting standard stated in *United States v. Mechanik,* 475 U.S. 66,

78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)). The grand jury violations in *Bank of Nova Scotia* concerned numerous violations of secrecy and disclosure requirements of Rules 6(d) and 6(e), but not a sealing violation. *See Bank of Nova Scotia,* 487 U.S. at 257–58, 108 S.Ct. 2369.

■ Unlike the grand jury violations in *Bank of Nova Scotia,* the sealing of an indictment necessarily occurs after the grand jury has voted to indict. In this case, there was no allegation of impropriety during the grand jury proceedings. As a consequence, this court must examine whether the error affected a part of the criminal proceedings different than the grand jury proceedings in *Bank of Nova Scotia.* The error in this case, the improper sealing of an indictment, occurred immediately after the return of the indictment and before trial. The potential impact of the error could affect not only the outcome of any possible trial, but also the course of plea negotiations, discovery, the preparation of witnesses for trial, and pretrial motions and hearings. In short, the sealing error could have affected the entire post-indictment proceedings and harmed the defendants' ability to defend against the charges even before the commencement of trial. Accordingly, this court holds that, for sealing violations under Rule 6(e)(4), the government must demonstrate that the improper sealing did not substantially affect a defendant's ability to defend against the indictment.

■ The cases cited by the government for the proposition that harmless error cannot be assessed until after trial do not involve sealing violations. *See United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *United States v. Garib–Bazain,* 222 F.3d 17 (1st Cir.2000) (per curiam). The holdings in *MacDonald* and *Garib–Bazain,* which involved the defendants' interlocutory ap-

peals of pretrial motions to dismiss the indictment, rested on the general policy against interlocutory appeals. *See Mac-Donald*, 435 U.S. at 854, 98 S.Ct. 1547; *Garib–Bazain*, 222 F.3d at 18–19.[5] In circumstances when this court must determine whether the improper sealing of an indictment was harmless error, as here, nothing in the cases cited by the government mandates a trial before assessing harmlessness. Thus, the assessment of whether the sealing violation substantially affected the defendant's ability to defend against the charges may be properly conducted before trial. While we need not address the question of whether a pretrial determination of harmless error is appropriate in every instance involving a sealing violation, the district court's uncontested finding that the defendants innocently destroyed documents relevant to their defense persuades us that it is appropriate in the instant case.

 In determining whether an error is harmless, the proper standard is not whether the defendants would have been in the same position absent the error. *Cf. Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)

("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence.") (construing a harmless error statute later incorporated into Rule 52(a)). Rather, the applicable standard for assessing harmless error is to consider the sealing error in context and determine whether it substantially influenced a defendant's ability to defend against the charges. *Cf. id.* This assessment is an objective one. *See id.* at 764, 66 S.Ct. 1239 ("The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting."). The government ordinarily has the burden of demonstrating that a nonconstitutional error was harmless.[6] *See Rivera*, 900 F.2d at 1469 n. 4. "[I]f it is within the range of reasonable possibility that a non-constitutional error may have affected the verdict, the accused does not have the burden of showing an adverse effect." *Id.* (quotation omitted); *but see infra* note 7.

This court recognizes that the government's burden to show that the error did not substantially affect the defendant's

---

**5.** The government also cites *United States v. Crouch*, which involved a defendant's due process claim of pre-indictment delay. 84 F.3d 1497 (5th Cir.1996) (en banc). The Fifth Circuit, sitting en banc, reversed the district court's pre-trial dismissal of the indictment, noting that the defendants had shown only potential, speculative prejudice as a result of the delay. *See id.* at 1523. The court held that pre-trial dismissal of an indictment on a due process claim may not be made unless the defendant demonstrates actual, substantial prejudice to the defense *at trial. See id.* at 1523. "In all but the clearest and most indisputable cases, the district court, even though inclined to grant such a motion, should nevertheless normally withhold doing so until after verdict, when the assessment of actual, substantial trial prejudice can more accurately be made." *Id. Crouch* is not a harmless error case.

**6.** In its briefs, the government argues that the defendants bear the burden of demonstrating harmless error. Although the government notes correctly that all of the circuits addressing the prejudice issue have placed the burden of demonstrating prejudice on the defendant, those cases analyzed the sealing violation as a violation of the statute of limitations, not as a violation of Rule 6(e)(4). We have already determined in Section III.A., *supra*, that the government did not violate the statute of limitations in this case. Having urged this court to hold, as we do, that an improperly sealed indictment sealed before the expiration of the statute of limitations violates Rule 6(e)(4), the government cannot then reverse course and argue for the application of the statute of limitations prejudice requirement.

ability to defend against the indictment may be difficult to meet. The defendant, of course, is in the best position to demonstrate how his defense has been adversely affected as a result of the sealing violation. More importantly, the government may not be able to compel the defendant's cooperation in articulating harmlessness. The defendant's Fifth Amendment right against self-incrimination and the attorney-client privilege may restrict the government's access to information that could help demonstrate harmless error. Whatever the difficulties, however, they were invited by the government when it sealed the indictment for an improper purpose.

 In this case, the government does not challenge the district court's finding that Douglas Thompson innocently destroyed relevant documents after the statute of limitations ran but before the indictment was unsealed. The government also does not argue that the district court's factual findings supporting its conclusion of prejudice with respect to the counts involving the Thompsons' communications with the SBA are clearly erroneous. Rather, the government argues "there is no indication that any of the claimed lost records pertain in any way to the dealings between defendants and [Bob] More or [Bret] Young, as opposed to loan-negotiation communications between defendants and the SBA." The government also asserts there is no record indication that the Thompsons' ability to cross-examine More or Young at trial will be impaired by the destruction of Douglas Thompson's documents. In other words, the government argues that the prejudice found by the district court is not relevant to certain counts in the indictment, and therefore does not warrant a dismissal of *all* counts.

Moreover, the government questions the effect of the destruction of documents upon the Thompsons' and other witnesses' memories about the relevant events. The government argues that, in order to be harmful, the defendants' memory loss must have occurred during the improper sealing period, as required by *United States v. Muse,* 633 F.2d 1041, 1043–44 (2d Cir.1980) (en banc).

Applying the harmless error standard, this court concludes that the sealing violation was not harmless because it substantially affected the Thompsons' ability to defend the indictment. The district court found that, during his move, Douglas Thompson "ordered that the records five years or older be destroyed, *including* records of the SBA loan. . . . Prior to June 1999, defendants had a complete SBA file *and all their notes and other information available to them to support their defense.*" *Thompson,* 104 F.Supp.2d at 1310–11 (emphases added). The district court thus found that *all* documents relating to the defenses against all the indicted charges, not merely those relating to the SBA loan negotiations, were destroyed during Douglas Thompson's move to Chapman, Kansas.

The record supports this conclusion. Both Douglas Thompson and his wife, Connie Thompson, who assisted in the move, gave uncontroverted testimony at the March 22 hearing that, with the exception of some client files from Douglas' law practice and files relating to wills, *all* the logs of telephone conversations, Douglas' notes and memoranda of telephone calls, calendars, planners, personal tax records, and personal documents which predated January 1, 1995 were destroyed during the move. In particular, these documents included Douglas Thompson's memoranda of his telephone calls, which included details of his conversations necessary for later recollection. Nothing in the record indicates that Douglas Thompson destroyed only the documents pertinent to the SBA loan negotiations. To the contrary, the move resulted in extensive destruction of

Douglas Thompson's business and personal documents older than five years.

The district court also found that Douglas Thompson transacted all of the business and communicated with the SBA on behalf of Plaza Speedway, and that Douglas safeguarded all communications with the SBA and did not give any copies of his records to Roger. Roger Thompson did not communicate with the SBA independent of Douglas. The government does not challenge these findings as clearly erroneous.

At the evidentiary hearing, the government did not examine any of the witnesses about the Thompsons' alleged transactions with More and Young or the allegedly false statements of Bret Young Construction and Bob More, even though it had the opportunity to cross-examine all the witnesses. Nor did the government even call Bret Young and Bob More to testify. The government does not allege and the record does not indicate that it requested more time to prepare for the hearing or was unprepared to conduct a thorough cross-examination of witnesses.

The record thus contains ample evidence that the destruction of the documents which occurred during the sealing period substantially affected the Thompsons' ability to defend against all the charges contained in the indictment. The government has failed to introduce any evidence that the improper sealing of the indictment did not harm the defendants. Without such evidence, it has failed its burden of demonstrating harmless error.[7]

Accordingly, the order of the district court dismissing the indictment with prejudice is **AFFIRMED.**

---

7. The government does not argue that our harmless error analysis is governed by *O'Neal v. McAninch. See,* 513 U.S. 432, 436–37, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (noting that in cases where the court has "grave doubt" about the harmlessness of the error, it is the court's responsibility to determine harmlessness " 'without benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial' " (quoting Roger J. Traynor, *The Riddle of Harmless Error* 26 (1970))); *see also Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.,* 175 F.3d 1221, 1239–41 (10th Cir.1999) (declining to decide whether *O'Neal* reverses this court's use of burdens of proof when conducting harmless error analysis in civil cases); *Allen v. Minnstar, Inc.,* 97 F.3d 1365, 1374–75 (10th Cir.1996) (Lucero, J., concurring) (noting that a "burden-free" harmless error approach seems to have been applied in this court's civil cases after *O'Neal* ). As in *Morrison Knudsen,* this court need not decide whether *O'Neal,* which involved harmless error analysis in habeas cases, applies in this case. Even assuming *O'Neal* governs the instant case, we would still conclude, based on a review of the entire record, that the violation of Rule 6(e)(4) substantially affected the Thompsons' ability to defend against all the indicted charges. At the evidentiary hearing and on appeal, the government has failed to furnish *any* evidence that the sealing error was harmless. *See Morrison Knudsen,* 175 F.3d at 1241 (concluding that if *O'Neal* applies to civil cases, the "risk of doubt" rests with the appellant).